# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00606-CV

**Robert E. Williams, Timothy David Williams, Terry Wayne Tausch, Tommy Joe Robinson, Starley Eugene Shugart, and Charles J. Giammalva, Appellants**

**v.**

**Texas State Board of Orthotics & Prosthetics; Donna S. Flippin, Individually and in her capacity as Executive Director of the Texas Board of Orthotics and Prosthetics; and Texas Department of Health, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. GN003230, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

This case concerns the validity of certain rules passed by the Texas State Board of Orthotics and Prosthetics (the Board) that allow practicing orthotists to obtain licenses under the new Orthotics and Prosthetics Act (the Act) through exemptions from the formal licensing requirements.[1] *See* Tex. Occ. Code Ann. §§ 605.001-.411 (West 2004). Appellants Robert E. Williams, Timothy David Williams, Terry Wayne Tausch, Tommy Joe Robinson, Starley Eugene Shugart, and Charles

---

[1] This case concerns only orthotics, not prosthetics.

J. Giammalva are individuals who had been practicing orthotics for several years before the passage of the Act in 1997. Appellants sought declaratory relief that the Board had exceeded its statutory authority in promulgating the challenged rules. They appeal the district court's summary judgment in favor of the Board, declaring the rules valid. For the reasons that follow, we reverse the judgment of the district court and declare the rules invalid.

## BACKGROUND

The practice of orthotics was not regulated in Texas until the Act was passed in 1997, creating the Board and requiring all persons who practice orthotics in Texas to hold a license issued by the Board. Act of May 23, 1997, 75th Leg., R.S., ch. 1288, § 1, 1997 Tex. Gen. Laws 4914, 4914 (codified at Tex. Occ. Code Ann. §§ 605.001-.411 (West 2004)). To obtain a license to practice orthotics, a licensee must meet extensive requirements pertaining to training, education, clinical residency, and examinations. *See* Tex. Occ. Code Ann. § 605.252(b) (West 2004). The Act provides for a few exemptions to the usual licensing requirements, allowing a person to obtain a license without meeting any of the requirements of section 605.252. *Id.* § 605.254 (West 2004). One of these exemptions "grandfathers" a practicing orthotist who had been providing "comprehensive orthotic care" for at least three years prior to the Act's passage. *See id.* § 605.254(a)(1)(A); *Bloom v. Texas State Bd. of Exam'rs of Psychologists*, 492 S.W.2d 460, 461 (Tex. 1973) ("purpose of grandfather provisions in licensing acts is to exempt from statutory regulations those members who have acceptably followed their profession or trade for a required number of years"). Appellants had all practiced orthotics for three or more years prior to 1997.

2

In early 1999, appellants filed applications with the Board seeking licenses under the grandfather exemption. *See* Tex. Occ. Code Ann. § 605.254(a)(1)(A). After some time, the Board denied each appellant a license, finding that none of them had provided "comprehensive orthotic care."[2] Appellants requested hearings on the denial of their licenses. At some point, each appellant informed the Board that he wished to amend his application to be considered for a second exemption as a person possessing "unique qualifications." *See id.* § 605.254(a)(2) (West 2004).

While the hearing proceedings were still pending, appellants filed this declaratory-judgment action in district court challenging as invalid the Board's rules governing the licensing exemptions. In particular, they challenged the Board's rule 821.2(8) defining "comprehensive orthotic care." *See* 22 Tex. Admin. Code § 821.2(8) (2003). Appellants contended that the rule's definition of "comprehensive orthotic care" was too inflexible, requiring them to have experience in manufacturing orthotic devices to procure a license under the grandfather exemption, when it was common practice before the Act's passage for orthotists to fit patients with pre-fabricated devices. They also contested the validity of rule 821.15, describing the exemption for "unique qualifications," because it merely duplicated the requirement of providing comprehensive orthotic care. *See* 22 Tex. Admin. Code § 821.15 (2003). Appellants urged that in formulating the rules the Board exceeded its authority by violating the plain language of the Act and promulgating rules that are arbitrary and

---

[2] For some of the appellants, the Board indicated specifically why the requirement of comprehensive orthotic care had not been met: "All your employment has been at Relay Medical, a durable medical equipment company. Durable medical equipment companies have historically sold 'off-the-shelf' equipment and would not allow for the provision of comprehensive care."

3

unconstitutionally vague. Appellants also claimed that the rules are invalid because the Board did

not follow certain procedural requirements of the Texas Administrative Procedure Act (APA) in

promulgating them.[3] *See* Tex. Gov't Code Ann. §§ 2001.024(a)(8), .033, 2006.001(2), .002 (West

2000).

Appellants and the Board filed cross-motions for summary judgment. The Board

asserted that the rules were valid and that in any case, appellants had no standing to challenge the

rules. The district court granted summary judgment in favor of the Board, finding that appellants

have standing to challenge the rules[4] and declaring that the challenged rules are valid because the

Board had not exceeded the scope of its authority, the rules are not unconstitutional, and the Board

substantially complied with the APA's procedural requirements. Appellants reassert their challenges

to the rules on appeal.

## DISCUSSION

*Standard of review*

The propriety of a ruling on a traditional motion for summary judgment raises a

question of law, which we review *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.

---

[3] Appellants allege that the Board provided neither a reasoned justification for the rules, *see* Tex. Gov't Code Ann. § 2001.033 (West 2000), nor a small-business impact statement, *see id.* §§ 2001.024(a)(8), 2006.001(2), .002 (West 2000).

[4] The Board has abandoned its jurisdictional argument on appeal.

4

1994); *see* Tex. R. Civ. P. 166a(c). The proper inquiry on appeal is whether the movant, in seeking summary judgment, fulfilled its initial burden of establishing that no genuine issue of material fact exists and that judgment should be granted as a matter of law. *Arlington Indep. Sch. Dist. v. Texas Attorney Gen.*, 37 S.W.3d 152, 156 (Tex. App.—Austin 2001, no pet.) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 675-79 (Tex. 1979)). Evidence is viewed in the light most favorable to the non-movant with all reasonable inferences indulged and any doubts resolved in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

Where both parties file motions for summary judgment and the court denies one and grants the other, the reviewing court should review the summary-judgment evidence presented by both sides and decide all questions presented and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

### The Act

The licensing portion of the Act begins by providing that "[a] person may not practice, attempt to practice, or offer to practice orthotics . . . or in any way hold the person out as being able to practice orthotics . . . unless the person holds a license issued by the [B]oard." Tex. Occ. Code Ann. § 605.251 (West 2004). The Act then provides the criteria for license eligibility, which include passing a written and practical examination and holding a bachelor's degree in orthotics and prosthetics or a bachelor's degree in any subject and an orthotic or prosthetic certificate issued by a practitioner education program, among other requirements. *See id.* § 605.252.

5

The Act also provides for "Exemptions From or Substitutes for License Requirements." *Id.* § 605.254. Section 605.254 provides a complete exemption from the license requirements of section 605.252 if the applicant is a Texas resident who

(1) applies for the exemption not later than the 181st day after the date on which the [B]oard's initial rules are finally adopted and:

    (A) *has provided comprehensive orthotic* or prosthetic *care for at least three years* before the date of application, including practicing orthotics or prosthetics in this state for the year preceding that date; or

    (B) has provided comprehensive orthotic and prosthetic care for at least six years, including practicing orthotics and prosthetics in this state for the year preceding the application date; **or**

(2) presents evidence satisfactory to the [B]oard that the person *possesses unique qualifications* to practice orthotics, prosthetics, or orthotics and prosthetics.

*Id.* § 605.254 (emphasis added). The first exemption may be used by people who have provided "comprehensive orthotic care" for at least three years prior to applying for a license. Referred to as a "pathway" to licensure by both the Board and appellants, this exemption is appropriately considered a "grandfather" provision because it countenances a way for people who have been practicing orthotics to continue their profession under their former methods without having to conform to a new statutory requirement. *See Bloom*, 492 S.W.2d at 461. Grandfather exemptions "are granted upon the presumption that those already practicing their profession were lawfully and satisfactorily performing their services on the date the regulatory act became effective." *Id.* The second pathway, by not providing a window of time in which applicants must apply or requiring a

6

specific number of years' practice, is not a grandfather provision but offers a general alternative to the usual licensing requirements to applicants with "unique qualifications."

*The rules*

The legislature expressly granted the Board the power to propose and adopt rules to carry out its duties under the Act. Tex. Occ. Code Ann. § 605.154 (West 2004). However, an agency's rules may be held invalid despite the agency's attempt to perform its statutory duties. "An agency rule is invalid if (1) the agency had no statutory authority to promulgate it; (2) it was not promulgated pursuant to proper procedure; or (3) it is unconstitutional." *Railroad Comm'n v. Arco Oil & Gas Co.*, 876 S.W.2d 473, 477 (Tex. App.—Austin 1994, writ denied). In deciding whether an administrative agency has exceeded its rulemaking powers, the determinative factor is whether the rule's provisions are "in harmony" with the general objectives of the statute. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 750 (Tex. 1995); *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968); *Patient Advocates of Tex. v. Texas Workers Comp. Comm'n*, 80 S.W.3d 66, 75 (Tex. App.—Austin 2002, pet. granted). In determining whether a rule is in harmony with an act's general objectives, courts look to all applicable provisions of that act, rather than only one particular section. *Gerst*, 432 S.W.2d at 706; *Patient Advocates*, 80 S.W.3d at 75. As in all questions of statutory interpretation, our goal is to determine and give effect to the legislature's intent. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999).

7

*Grandfather exemption*

The Act allows licensure grandfathering for applicants who have provided "comprehensive orthotic care" for three years, but does not define that term. In rule 821.2, the Board adopted the following definition of "comprehensive orthotic care":

> Comprehensive orthotic care—Includes: the evaluation of patients with a wide range of lower limb, upper limb and spinal pathomechanical conditions, respectively; the taking of measurements and impressions of the involved body segments; the synthesis of observations and measurements into a custom orthotic design; the selection of materials and components; the fabrication of therapeutic or functional orthoses including plastic forming, metal contouring, cosmetic covering, upholstering and assembling; the fitting and critique of the orthosis; the appropriate follow-up, adjustments, modifications and revisions in an orthotic facility; the instructing of patients in the use and care of the orthoses; the maintaining of current encounter notes and patient records. The practitioner with comprehensive orthotic care experience must, within the limits set by the Texas Board of Orthotics and Prosthetics, apply all of the forementioned experiential elements to the orthoses listed below. At least two-thirds of the orthoses must be included: foot orthosis; ankle-foot orthosis; knee-ankle-foot orthosis; hip-knee-ankle-foot orthosis; hip orthosis; knee orthosis; cervical orthosis; cervical-thoracic orthosis; thoracic-lumbar-sacaral orthosis; lumbar-sacral orthosis; cervical-thoracic-lumbar-sacral orthosis; hand orthosis; wrist-hand orthosis; shoulder-elbow orthosis; shoulder-elbow-wrist-hand orthosis.

22 Tex. Admin. Code § 821.2(8).

Appellants take issue with this definition because it requires a person seeking a grandfather exemption to have applied *all* of the listed "experiential elements," including the fabrication of orthoses. *See id.* (practitioner must "apply all of the forementioned experiential elements to the orthoses listed below"). Appellants assert that the requirement that a person have engaged in the manufacture of orthoses does not provide them a meaningful opportunity to

demonstrate their competence, as grandfather provisions must do.  *See Berger v. Board of Psychologist Exam'rs*, 521 F.2d 1056, 1063 (D.C. Cir. 1975) (applicant engaged in practice of psychology prior to regulatory act's passage must be accorded fair opportunity to demonstrate professional skill according to reasonable standards before denied right to continue practice to avoid due-process violation); *see also Bloom*, 492 S.W.2d at 461.  The issue we must resolve is whether the Board's definition of this phrase is in harmony with the Act, or whether the definition exceeds the scope of the Board's authority, thus rendering invalid the portion of rule 821.2 defining "comprehensive orthotic care" and other rules incorporating that definition.[5]

Appellants contend that the definition is too inflexible and forecloses the grandfather exemption to them because they do not have experience fabricating orthoses, but do have extensive experience custom fitting their patients with pre-fabricated orthoses.  They assert that the rule's definition makes the grandfather exemption meaningless for an entire group of experienced orthotists because it was common practice before the Act's passage to custom fit patients with pre-fabricated

---

[5] Appellants also challenge three other Board rules in which the definition appears, including two that are no longer in effect (due to the 180-day grandfathering window) but that are relevant to this dispute.  For example, former rule 821.11 mirrored section 605.254(a)(1)(A) of the Act by providing that a person is exempted from the usual licensing requirements if the person has provided "comprehensive orthotic care" for at least three years.  *See* 23 Tex. Reg. 11136 (1998) (adopted), *repealed by* 27 Tex. Reg. 10935 (2002) (former 22 Tex. Admin. Code § 821.11) (Tex. Bd. of Orthotics & Prosthetics).  It is former rule 821.11 under which appellants initially applied.  *See also id.* at 11137 (former 22 Tex. Admin. Code § 821.13) (mirroring section 605.254(b) of Act, which allows for exemption if person has provided comprehensive orthotic care for less than three years but passes examination).  Rule 821.15, while still in effect, implements section 605.254(a)(2) of the Act and is directly addressed *infra*.

orthoses. Furthermore, they assert that the rule discriminates against small businesses and solo practitioners, who have no manufacturing facilities and thus cannot manufacture their own orthoses.

Appellants first support their argument by referring to the definition of "orthotics" in the Act: "the science and practice of measuring, designing, fabricating, assembling, fitting, adjusting, *or* servicing an orthosis . . . ." Tex. Occ. Code Ann. § 605.002(14) (West 2004) (emphasis added). They urge that the use of the word "or" implies that a person need not engage in *all* of the listed activities to be practicing "orthotics" under the Act.

The definition in the Act of "orthosis" indicates a legislative acknowledgment that some orthotists who do not personally fabricate orthoses may still lawfully practice orthotics. An orthosis is "a custom-fabricated *or* custom-fitted medical device designed to provide for the support, alignment, prevention, or correction of a neuromuscular or musculoskeletal disease, injury, or deformity." *Id.* § 605.002(12) (West 2004) (emphasis added). Because the definition of orthosis includes either a custom-*fabricated* or a custom-*fitted* device, and the various verbs contained in the definition of orthotics modify the noun "orthosis," the reasonable conclusion is that a person can engage in the practice of orthotics but deal entirely with custom-fitted rather than custom-fabricated devices. If a person deals entirely with custom-fitted devices, by implication that person does not engage in fabrication. Thus, we begin with the presumption that fabrication of orthoses is not an indispensable component of the lawful practice of orthotics.

Yet, argues the Board, the Act's grandfather exemption does not require merely the practice of orthotics for three years, but the provision of *comprehensive* orthotic care. "Comprehensive," continues the Board, means "covering a matter under consideration completely

10

or nearly completely:  accounting for or comprehending all or virtually all pertinent considerations:

INCLUSIVE." *Webster's Third New International Dictionary* 467 (Philip Babcock Gove ed. 1986);

*see also The American Heritage Dictionary of the English Language* 274 (William Morris ed. 1973)

("Including or comprehending much; large in scope or content").  Thus, the Board concludes that its

rule properly required all of the seven activities listed in the Act's definition of orthotics to qualify

for comprehensive orthotic care.[6]

Furthermore, continues the Board, it properly considered "comprehensive" to include

experience with manufacturing orthoses because licensure under the Act requires a bachelor's degree

from an educational program accredited by the Commission on Accreditation of Allied Health

Education Programs (CAAHEP).  *See* Tex. Occ. Code Ann. § 605.252(b) (West 2004).  The current

CAAHEP standards for accreditation include teaching topics such as computer-aided design and

manufacture of orthoses, materials and components, and the fabrication process.  *See* Commission

on Accreditation of Allied Health Education Programs, *Standards and Guidelines for an Accredited*

*Educational Program for the Orthotist and Prosthetist*, *at* http://www/caahep.org/caahep/

accredit.asp?doc=OP_SG, last visited Apr. 2, 2004.  The Board relies on these accreditation standards

to include fabrication in its definition of comprehensive orthotic care, asserting that it is a reasonable

requirement.  *See Bullock v. Hewlett-Packard Co.*, 628 S.W.2d 754, 756 (Tex. 1982) ("Courts must

---

[6] Even the rule expands upon the seven activities listed in the definition of orthotics by additionally requiring "the instructing of patients in the use and care of the orthoses," "the maintaining of current encounter notes and patient records," and "the evaluation of patients."  *See* 22 Tex. Admin. Code § 821.2(8).  Each of these activities goes to the patient-practitioner relationship, which appellants assert reaches the intent behind the grandfather exemption, as discussed *infra*.

11

uphold 'legislative' administrative rules if they are reasonable. The rules need not be, in the court's opinion, wise, desirable, or even necessary."). The Board also implies that by referencing the CAAHEP standards, the legislature intended its definition of "comprehensive" to be compatible with and equivalent to those standards.

However, this definition of comprehensive orthotic care ignores the basic premise that the grandfather exemption provides a means for an applicant to obtain a license *without* meeting the educational requirements under the Act. The Act expressly provides that a license holder under the grandfather exemption "is subject to the license renewal requirements established by the [B]oard, *other than the academic*, clinical training, and examination requirements, which the [B]oard may *not* impose as a condition of the person's license." Tex. Occ. Code Ann. § 605.254(c) (West 2004) (emphasis added).

The Act requires the provision of comprehensive *orthotic care*, not the comprehensive *practice of orthotics* or the practice of *comprehensive orthotics*. This is an important distinction. Indeed, the statutory exemption itself refers to both care and the practice of orthotics, but only "care" is modified by the word comprehensive: an applicant must have "provided *comprehensive orthotic . . . care* for at least three years before the date of the application, including *practicing orthotics . . .* in this state for the year preceding that date." *Id.* § 605.254(1)(A). We must presume that the legislature's choice of the phrase "orthotic care" was intentional, especially in light of its subsequent use in the same subsection of the phrase "practicing orthotics." *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied).

12

Appellants point to the Act's definition of "profession of orthotics" to support their position that comprehensive orthotic care does not require fabrication of orthoses:

> 'Profession of orthotics or prosthetics' means *allied health care medical services* used to identify, prevent, correct, or alleviate acute or chronic neuromuscular or musculoskeletal dysfunctions of the human body that support and provide rehabilitative health care services concerned with the restoration of function, prevention, or progression of disabilities resulting from disease, injury, or congenital anomalies. Orthotic and prosthetic services include *direct patient care*, including *consultation, evaluation, treatment, education, and advice* to maximize the rehabilitation potential of disabled individuals.

Tex. Occ. Code Ann. § 605.002(16) (West 2004) (emphasis added).

We agree with appellants that "comprehensive orthotic care" more properly encompasses the extensive *care* of a patient, not whether the orthotist personally manufactures an orthotic device. The use of the word "care" implies interactive patient contact, and the modifiers "orthotic" and "comprehensive" imply that such contact runs the gamut from meeting a patient for the first time, listening to her orthotic concerns, evaluating her needs, advising her as to alternative treatments, treating her ailments, and following up as necessary. It implies caring for an orthotic patient from start to finish. It does not imply donning a tool belt and contouring metal or forming plastic. Even the bill analysis of the 1997 legislation reveals a concern with direct patient care, rather than whether the orthotist manufactures orthoses: "An orthotist is a health care professional who provides care to a patient who requires a brace. The orthotist evaluates the individual's situation and recommends the best type of orthosis to treat that patient." *See, e.g.*, Senate Comm. on State Affairs, Bill Analysis, Tex. S.B. 291, 75th Leg., R.S. (1997).

13

Based on a reading of the entire Act, we conclude that its objectives include providing for the regulation of the orthotic and prosthetic industry, protecting the public against unqualified practitioners, and bringing about uniformity in the level of care orthotists provide. However, an equally important objective is to initiate a new regulatory scheme without unconstitutionally disturbing the practice of already competent orthotists—hence the grandfather exemption. We must, if possible, construe statutes to avoid constitutional infirmities. *General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *Texas Bldg. Owners & Managers Ass'n v. Public Util. Comm'n*, 110 S.W.3d 524, 536 (Tex. App.—Austin 2003, pet. denied). Requiring individuals who have been providing orthotic care for several years to have personally manufactured orthoses does not further the purposes of the Act. The rule's definition of comprehensive orthotic care is at odds with the legislature's intent that already practicing orthotists be allowed a reasonable opportunity to demonstrate their competency. *See Berger*, 521 F.2d at 1056; *see also Bloom*, 492 S.W.2d at 461. We reject the Board's argument that a person must have experience in fabrication or manufacturing to have provided "comprehensive orthotic care" under the grandfather exemption. We therefore hold that rule 821.2(8), as well as former rules 821.11 and 821.13, are invalid because they are not in harmony with the general objectives of the Act.

## A. *Unique qualifications*

The other rule appellants challenge is rule 821.15, which describes the "unique qualifications" a person must possess to qualify for licensure under the second pathway to exemption. *See* Tex. Occ. Code Ann. § 605.254(a)(2); 22 Tex. Admin. Code § 821.15. That rule provides:

14

(b) Unique qualifications. A uniquely qualified person means a resident of the State of Texas who, through education, training and experience, is as qualified to perform . . . orthotic care as those persons who obtain licensure pursuant to the Act, § 605.252.

    (1) The [B]oard . . . will determine whether a person is uniquely qualified on a case-by-case basis based on the information supplied by the applicant and other information deemed relevant by the [B]oard.

    (2) The [B]oard *will not approve a person as possessing unique qualifications who has not provided comprehensive orthotic care* . . . to the extent required by the Act, § 605.254(a).

22 Tex. Admin. Code § 821.15 (emphasis added).

Appellants contend that this rule is invalid because by utilizing the same "comprehensive orthotic care" standard as the grandfather exemption, it collapses the second pathway into the first, rendering the second exemption redundant and superfluous. Appellants assert that the "unique qualifications" exemption must entail a different standard than the grandfather exemption, because otherwise the legislature would not have created two distinct exemptions. If the standards were the same, there would be no need for two "pathways."[7]

We agree. The statute clearly envisions a second, alternate way for a person to obtain a license without meeting the new licensing requirements, apart from the grandfather provision. In

---

[7] The Board urges that the exemptions are distinct by virtue of the grandfather provision being available only until 180 days after the Board's promulgation of rules. *See* Tex. Occ. Code Ann. § 605.252(a)(1). We reject the implication that the only difference between the exemptions is the time window in which an applicant must apply. The legislature's use of distinct language in the first and second exemptions indicates otherwise. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied) (courts must presume that every word, phrase, and expression in statute was deliberately chosen).

15

construing a statute, we must ascertain and give effect to the legislature's intent for the provision we are construing. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). The legislature's intent is determined by reading the language used in the particular statute and construing the statute in its entirety. *See Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 190 (Tex. 1981). We will avoid a construction that creates a redundancy or renders a provision meaningless. *See Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 838 (Tex. App.—Austin 2001, pet. denied); *see also In re Missouri Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999) (legislature is presumed not to have done useless act). Furthermore, we will not read into an act a provision that is not there, except to give effect to clear legislative intent. *In re Bell*, 91 S.W.3d 784, 790 (Tex. 2000).

By defining "unique qualifications" to mean having provided "comprehensive orthotic care," the Board has inserted into the second exemption a provision that is not there. We must presume that every word, phrase, and expression in a statute was deliberately chosen and that the words excluded from the statute are done so purposefully. *See Gables*, 81 S.W.3d at 873; *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). Had the legislature intended the requirements under both exemptions to be the same, it would have created only one exemption, not two. Yet, the legislature clearly intended two distinct pathways: a grandfather exemption, for those who had "acceptably followed their profession for a required number of years," *see Bloom*, 492 S.W.2d at 461, and a general exemption, for other types of applicants who do not meet the usual requirements but are nonetheless "uniquely qualified" to practice orthotics. The Board's rule 821.15

16

is not in harmony with the Act's intent to allow for two distinct, alternative means to become licensed without meeting the Act's licensing requirements.

Appellants further assert that this rule is invalid because its other provision—that the Board will determine whether a person is uniquely qualified on a case-by-case basis—is unconstitutionally vague. While purporting to "describe the unique qualifications a person must possess," it gives no such description and provides no standard for when a person would qualify under rule 821.15(b)(1). *See* 22 Tex. Admin. Code § 821.15(b)(1). Although the Act's use of the word "unique" indicates that whether an applicant meets the statutory requirement will necessarily entail a case-by-case determination, we agree with appellants that the rule should provide some guidance to applicants as to what qualifications will pass muster. However, we need not consider this argument because we hold that the rule's incorporation of the "comprehensive orthotic care" standard renders rule 821.15 invalid.

Because we hold that each of the challenged rules is invalid due to the Board's exceeding its statutory authority, we do not reach appellants' other two issues: that the Board did not follow certain procedural requirements of the APA in promulgating them and that the rules are unconstitutional.

## CONCLUSION

The Board's rule 821.15 and the portion of rule 821.2 defining "comprehensive orthotic care" are invalid because in promulgating them, the Board exceeded its statutory authority.[8]

---

[8] Likewise, former rules 821.11 and 821.13, which applied during the period before the grandfather exemption expired, are also invalid.

We therefore reverse the district court's grant of summary judgment in favor of the Board and render judgment in favor of appellants that the challenged rules are invalid.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Reversed and Rendered

Filed:   April 8, 2004