**Opinion issued December 5, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-23-00358-CV**

————————————

**IN THE MATTER OF J.J.T., A Juvenile**

———————————————————————————————

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-02190J**

———————————————————————————————

**DISSENTING OPINION**

The majority holds that the juvenile court abused its discretion by waiving its jurisdiction because the evidence was insufficient to satisfy the statutory bases for transferring J.J.T. ("Jacob") from juvenile court to a criminal district court for criminal proceedings. *See* TEX. FAM. CODE § 54.02(j)(4)(A), (B). The majority opinion fails to distinguish between two distinct statutory bases for transfer, and it

also fails to interpret the statutory term "practicable" in a manner consistent with ordinary usage. Because the evidence suffices to support the trial court's ruling when the statute is properly construed, I respectfully dissent.

## Standard of Review

Courts use a two-step standard to review a juvenile court's order waiving its exclusive original jurisdiction and transferring a case to criminal district court. *Bell v. State*, 649 S.W.3d 867, 887 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). First, the court reviews the challenged findings under traditional evidentiary sufficiency standards. *Id.* In considering whether legally sufficient evidence supports a finding, the court views the evidence in the light most favorable to the challenged finding and disregards contrary evidence unless a reasonable factfinder could not reject it. *Id.*; *In re A.M.*, 577 S.W.3d 653, 659 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). If more than a scintilla of evidence supports the finding, then the evidence is legally sufficient. *Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659. In conducting a factual sufficiency review, the court considers all the evidence presented to determine whether the challenged finding conflicts with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659.

When the juvenile court sits as factfinder, as here, the court alone determines the credibility of witnesses and the weight to give their testimony. *Bell*, 649 S.W.3d

at 896; *In re A.B.*, No. 02-18-00274-CV, 2019 WL 983751, at *3 (Tex. App.—Fort Worth Feb. 28, 2019, no pet.) (mem. op.). The factfinder may "believe or disbelieve a witness's testimony, in whole or in part, and [is] tasked with weighing the evidence and resolving any inconsistencies." *Bell*, 649 S.W.3d at 896; *accord Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018).

If the appellate court concludes that the challenged findings are supported by legally and factually sufficient evidence, it proceeds to the second step: determining whether the juvenile court abused its discretion in ultimately waiving its jurisdiction and transferring the case. *Bell*, 649 S.W.3d at 887. A court abuses its discretion when it acts arbitrarily or without reference to any guiding rules and principles. *Id.* A juvenile court does not abuse its discretion just because it bases its decision on conflicting evidence. *Id.*; *see also In re A.M.*, 577 S.W.3d at 659 ("As with any decision that lies within the trial court's discretion, the question is not whether we might have decided the issue differently."). Rather, it abuses its discretion "when its decision to transfer is essentially arbitrary, given the evidence upon which it was based." *In re M.S.*, No. 01-21-00374-CV, 2022 WL 17981563, at *4 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, no pet.) (mem. op.) (quoting *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). "By contrast, a waiver decision representing a reasonably principled application of the

3

legislative criteria generally will pass muster under this standard of review." *Id.* (quoting *In re C.M.M.*, 503 S.W.3d at 701) (internal quotation omitted).

**Analysis**

The Texas Legislature created two alternative pathways for the State to procure a waiver of the juvenile court's exclusive jurisdiction in order to transfer a person to a district court for criminal proceedings. The first option is satisfying Family Code section 54.02(j)(4)(A), which requires the State to prove that "for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person . . . ." TEX. FAM. CODE § 54.02(j)(4)(A). Alternatively, subsection (B) requires the State to prove that "after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday" of the person because: "(i) *the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person*; (ii) the person could not be found; or (iii) a previous transfer order was reversed by an appellate court or set aside by a district court." *Id.* § 54.02(j)(4)(B) (emphasis added).

At the certification hearing before the juvenile court, the State argued that it had proven its entitlement to a transfer under both subsections (j)(4)(A) and (j)(4)(B)(i). As the majority correctly notes, "the omission of a due diligence finding constrains us from presuming that the trial court intended to include findings under

4

(B)." Consequently, the question is whether the State presented sufficient evidence to support the court's findings under subsection (j)(4)(A).

Answering this question requires us to construe the meaning of subsection (j)(4)(A) and determine how it differs from subsection (j)(4)(B)(i). The goal of statutory construction is to ascertain and give effect to the Legislature's intended meaning. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). We discern that intent by construing a statute in its entirety. *Id.* The Texas Supreme Court has directed that "every word of a statute must be presumed to have been used for a purpose. Likewise, . . . every word excluded from a statute must also be presumed to have been excluded for a purpose." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981) (citations omitted). "The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (citing *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006), and *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003)).

By enacting subsections (j)(4)(A) and (j)(4)(B)(i) and allowing the State to choose between them, the Legislature created two different pathways for the State to obtain a transfer of juvenile proceedings to criminal district court. Where the Legislature has created two pathways, we must assume that the Legislature intended

5

for them to be alternative routes, not redundancies. *Williams v. Tex. State Bd. of Orthotics & Prosthetics*, 150 S.W.3d 563, 573 (Tex. App.—Austin 2004, no pet.) ("Had the legislature intended the requirements under both exemptions to be the same, it would have created only one exemption, not two. Yet, the legislature clearly intended two distinct pathways . . . ."). As such, we should not interpret subsections (j)(4)(A) and (j)(4)(B)(i) to mean the same thing.

The Legislature's choice of language confirms that these two subsections impose different requirements on the State. Subsection (j)(4)(B)(i) requires the State to prove that "after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because . . . the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person." TEX. FAM. CODE § 54.02(j)(4)(B)(i). Whereas this subsection focuses on the existence of probable cause, subsection (j)(4)(A) does not mention probable cause at all. *Id.* § 54.02(j)(4)(A). Instead, subsection (j)(4)(A) simply requires proof that "for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person." *Id.* The presence of probable cause may be a consideration under subsection (j)(4)(A), but it is not a dispositive consideration as it is in subsection (j)(4)(B)(i).

Instead of giving every word, phrase, clause, and sentence its own purpose, *see Williams*, 150 S.W.3d at 573, the majority erroneously collapses the standards

of the two subsections into one by treating probable cause as dispositive under subsection (j)(4)(A). The majority states that "[n]ot moving forward when probable cause existed to proceed in juvenile court based on preferences for more evidence or not to re-interview juveniles are not 'reasons beyond the control of the state.'" But the only mention of probable cause contained in section 54.02(j)(4) comes in subsection (j)(4)(B)(i), not (j)(4)(A). Under subsection (j)(4)(B)(i), were the State to have probable cause before a person's 18th birthday, the juvenile court would not have grounds to transfer the case to district court. *See* TEX. FAM. CODE § 54.02(j)(4)(B)(i). By contrast, nothing in subsection (j)(4)(A) conditions the State's right to transfer on the absence of probable cause.

Moreover, despite proceeding under subsection (j)(4)(A), the majority does not construe the term "practicable" in its opinion. I would hold that the practicability standard of subsection (j)(4)(A) requires more than simply the presence of probable cause. Assuming *arguendo* that the State did have probable cause before Jacob's 18th birthday, it does not follow that granting the transfer would be an abuse of discretion. Subsection (j)(4)(A) "is meant to limit the prosecution of an adult for an act he committed as a juvenile if his case could *reasonably* have been dealt with when he was still a juvenile." *Moore v. State*, 532 S.W.3d 400, 405 (Tex. Crim. App. 2017) (per curiam) (emphasis added). In *In re E.B.*, the court found that the fact that the State had some evidence against E.B. before his 18th birthday did not mean that

7

charging him prior to his 18th birthday was reasonably capable of being accomplished or feasible. *In re E.B.*, No. 12-22-00162-CV, 2022 WL 17074849, at \*4 (Tex. App.—Tyler Nov. 17, 2022, no pet.) (mem. op.) (interpreting "practicable"). The same conclusion follows here.

Because section 54.02(j) does not define "practicable," the term is given its plain meaning which is initially determined by looking to dictionary definitions. *Id.*; *accord State v. Holcombe*, 187 S.W.3d 496, 500 (Tex. Crim. App. 2006). Black's Law Dictionary defines "practicable" as "reasonably capable of being accomplished; feasible." *Practicable*, BLACK'S LAW DICTIONARY (11th ed. 2019). Similarly, the Oxford Dictionary defines it as "able to be done or put into practice successfully." *Practicable*, OXFORD ENGLISH DICTIONARY, *available at* http://www.oed.com/search/dictionary/?scope=Entries&q=practicable (last visited Nov. 16, 2023). Thus, subsection (j)(4)(A) tests not whether the State dealt with the case at the earliest possibility (when probable cause existed), but rather whether the evidence was such that the State *reasonably* could deal with the case—considering the likelihood of success—before Jacob turned 18. *See Moore*, 532 S.W.3d at 405.

The testimony at the certification hearing was legally and factually sufficient to support the trial court's finding that it was not practicable for the State to proceed in juvenile court before Jacob turned 18. According to Deputy Crain, at the point that Jacob turned 18, the evidence against Jacob consisted of Tovar's uncorroborated

8

testimony that was "pretty self-serving." Deputy Crain testified that after the proffer meeting with Tovar, the evidence for charging Jacob had not significantly changed. Deputy Crain was not obligated to charge Jacob the second he had *some* evidence—however weak—implicating him. *See id.* at 404 ("While Section 54.02(j)(4)(A) requires the State to proceed against a juvenile while he is still a juvenile, or show that, for a reason beyond the control of the State it was not practicable to proceed in juvenile court before his 18th birthday, it does not impose an arbitrary deadline for prosecutorial action."). Although the majority posits that Deputy Crain could have re-interviewed Jacob after interviewing Tovar to procure a confession, Jacob's previous denial of involvement is some evidence that he was unlikely to confess.

Deputy Crain further testified that, believing that this he-said versus he-said evidence was weak, he immediately began the process to procure stronger evidence from Tovar's phone using Graykey technology. According to Deputy Crain, Graykey "can take many months up to years" to determine the correct passcode. The court heard no evidence contradicting Deputy Crain's testimony with respect to how long the Graykey procedure would take or the weakness of the State's case with only Tovar's testimony. As such, there is legally and factually sufficient evidence to support the trial court's conclusion that the impracticability of resolving Jacob's case before he turned 18 was due to reasons outside the State's control—namely, Jacob's untruthfulness and the lengthy timeframe for procuring Graykey evidence.

9

These facts make this a stronger case for affirmance than *In re E.B.*, in which the Tyler Court of Appeals held that the juvenile court did not abuse its discretion by allowing a transfer to the district court under subsection (j)(4)(A). *See* 2022 WL 17074849, at *4. In that case, minor E.B. was suspected of murdering a woman and her unborn child by striking the complainant with a deadly weapon and setting her on fire. *Id.* at *1. Following the killing, a detective interviewed the unborn child's alleged father, Allen Sutton, and Sutton's common-law wife, Lanisha Young. *Id.* Sutton and Young named E.B. as an alibi witness. *Id.*

Upon interviewing E.B. in 2016 and searching his phone, investigators discovered a spike in calls from Young to E.B. and texts where Young was "coaching E.B. via text message regarding what to tell the investigating officers during his initial interview." *Id.* E.B. continued to deny involvement in a second interview. *Id.* After receiving a "data 'dump' from E.B.'s cell phone" revealing communications with Young on the night the complainant disappeared, the investigators interviewed E.B. a third time, but he continued to mislead them. *Id.* In the fourth interview, E.B. admitted to driving the car with the complainant in the back seat and helping load the woman's body in the trunk after she was deceased. *Id.* at *2. E.B. told the investigators that Sutton had stabbed the woman with a knife and killed her by fire. *Id.* In a later polygraph interview, E.B. changed his story and

10

admitted to dousing the woman with gasoline, dragging her to the car, beating her with a tire iron, and concealing her body by burning it. *Id.*

At the transfer hearing, the detective testified that he did not bring a case against E.B. immediately following these 2016 interviews because he "needed corroborating evidence because he did not want to base a case solely on E.B.'s word," which had changed many times. *Id.* E.B. turned 18 in 2017, but no case was brought against him until 2019, when a lab finally returned the DNA results on burned bones that were found in 2017. *Id.* at \*2 & n.3. The detective explained that before E.B. turned 19, DNA results were pending, and investigators were still obtaining phone records and interviewing witnesses. *Id.* at \*2. The juvenile court granted a transfer to criminal district court upon finding that it was not practicable to proceed in juvenile court before E.B.'s eighteenth birthday due to factors outside the State's control. *Id.* at \*3.

Despite E.B.'s detailed confession, the Tyler Court held that it was not "practicable for the State to pursue charges against E.B. before his eighteenth birthday" for many reasons, including the fact that E.B. did not fully cooperate with the investigation, DNA results on the body were not in, and "E.B.'s version of events did not fully match Young's, so corroborating evidence was needed." *Id.* at \*4.

Here, the evidence supporting the State's case was significantly weaker than the evidence that the State had in *In re E.B.* when the defendant turned 18. The only

11

evidence that the State had was Tovar's accusation—nothing more. Jacob had not confessed, and the State had no data dump of information from Jacob's phone. Although Tovar revealed the passcode for his cell phone at the proffer meeting—an act that allowed the State to determine Jacob's cell phone number and eventually retrieve geolocation data for Jacob's phone—this revelation occurred roughly one month before Jacob turned 18, when there would not have been time to prosecute a case against him in juvenile court. Delays occurring after the defendant turned 18 are not relevant in our analysis. *Collins v. State*, 516 S.W.3d 504, 521 (Tex. App.—Beaumont 2017, pet. ref'd); *In re A.M.H.*, No. 12-19-00284-CV, 2020 WL 2078412, at *4 (Tex. App.—Tyler Apr. 30, 2020, no pet.) (mem. op.). This is some evidence that while it may have been possible for the State to proceed against Jacob before his 18th birthday, it was not practicable to do so, and that this lack of practicability was due to reasons outside the State's control.

Crediting evidence favorable to the challenged finding and disregarding contrary evidence that a reasonable fact finder could reject, I conclude that legally sufficient evidence supported the trial court's findings under subsection (j)(4)(A). Likewise, the juvenile court's findings do not conflict with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. Because the juvenile court's finding was supported by legally and factually sufficient evidence, I would hold that the court did not act arbitrarily or unreasonably, or without

12

reference to guiding principles. *See Bell*, 649 S.W.3d at 887. The juvenile court's waiver decision constitutes "a reasonably principled application of the legislative criteria," which generally passes muster under the applicable standard of review. *See In re M.S.*, 2022 WL 17981563, at *4 (quoting *In re C.M.M.*, 503 S.W.3d at 701). It was not "essentially arbitrary, given the evidence upon which it was based." *See id.* (quoting *In re C.M.M.*, 503 S.W.3d at 701).

 

April L. Farris
Justice

Panel consists of Justices Kelly, Landau, and Farris.

Justice Farris, dissenting.