**IN the INTEREST OF S.M.H. and W.H.H., Minor Children**

**NO. 14–16–00566–CV**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion Filed April 13, 2017

Rehearing En Banc Overruled
June. 22, 2017

Charles Tynan Buthod, John F. Nichols, Jr., Houston, TX, for Appellant.

Judith Batson Sadler, Cynthia Thomson Diggs, Nathan Prihoda, Houston, TX, for Appellee.

Panel consists of Justices Christopher, Busby, and Jewell.

## OPINION

Tracy Christopher, Justice

This is an appeal from a final judgment in a suit affecting the parent-child relationship. The parties elected to submit their

dispute to binding arbitration, but after the arbitrator issued her award, the trial court vacated the award upon finding that the arbitrator had exceeded her authority. The main issue presented to us is whether the trial court erred by issuing this vacatur. We conclude that it did. Although we agree that the arbitrator exceeded her authority, we believe that vacatur was not the correct remedy. Only a portion of the award was based on an issue outside of the arbitrator's authority, and that portion could have been excised from the award without affecting the merits of the arbitrator's other decision, which was based on an issue properly submitted to her. The trial court should have modified the award, rather than vacating it in its entirety. We reverse the trial court's judgment in part and remand for a hearing to determine whether confirmation of a modified award would be in the best interest of the children.

In a separate issue, we also consider whether the trial court erred by proceeding to a trial on the merits on a matter raised in a counter-petition for modification. Finding no error with respect to this issue, we affirm this part of the trial court's judgment.

## BACKGROUND

When Mother and Father divorced, they privately agreed that Father would continue to support Mother and the two children whom they shared. For Mother's benefit, Father promised to pay contractual alimony, and for the children's benefit, Father promised to pay for private school tuition and for other costs relating to extracurricular activities. These terms and many others were reduced to writing in an Agreement Incident to Divorce ("AID"), which was incorporated into the final decree of divorce.

After the divorce, disagreements arose over Father's support obligations, with each side insisting on different interpretations of the AID. Acknowledging that the AID was "sloppily written," Mother filed a petition with the trial court to clarify the terms of the AID and to enforce the obligations that Father had allegedly failed to honor.

Father filed a counter-petition, seeking a modification of his possession. Anticipating that he would be moving to another city, Father requested terms for long-distance visitation.

Mother and Father attended mediation, which resulted in a partial settlement of their dispute. In an effort to resolve other issues, Mother and Father entered into a Rule 11 Agreement, wherein they both agreed to submit to arbitration. The material terms of the Rule 11 Agreement provided as follows:

- A single arbitrator would preside over the arbitration. The arbitrator would be the same person who presided over the parties' mediation.

- The arbitration would be "baseball style," meaning that Mother and Father would each submit a proposal to the arbitrator, who was bound to select one of the two proposals, without making any changes to the proposal selected.

- The issues submitted to the arbitrator would be limited to support and possession.

- The support issue would be subject to binding arbitration, and the arbitrator's ruling would not be restricted to what a court might be able to order under Texas law. The parties expressly acknowledged that they contemplated "payments and issues which exceed those found in the Texas Family Code."

- Unlike the support issue, the possession issue would not be subject to binding arbitration. On this issue alone, the parties would request the arbitrator to meet with the children privately and then "propose a mediator's proposal" on the terms of holiday schedules and long-distance visitation.

Mother and Father exchanged their proposals three days before the arbitration. Then, on the morning of the arbitration, they entered into an Arbitration Agreement, which the arbitrator also signed. Under the terms of the Arbitration Agreement, the parties agreed to be bound by the rules set forth in the Rule 11 Agreement.

At the end of the arbitration, the arbitrator accepted Mother's proposal. This acceptance was memorialized in a written award drafted entirely by the arbitrator. The award also contained two paragraphs that addressed the issue of possession, but these paragraphs were not written in the form of a mediator's proposal. Instead, they were written as orders, in violation of the Rule 11 Agreement. The arbitrator ordered that holidays should be split between the parents and that terms should be added to the divorce decree allowing for long-distance visitation. The arbitrator also ordered Father to participate in therapy as a condition of his possession.

Back before the trial court, Mother moved to confirm the award and Father moved to vacate it. Father offered a laundry list of grounds in favor of vacatur, but the trial court relied on just one of them. Finding that the arbitrator had exceeded her authority, the trial court vacated the award in full.

Mother objected to the vacatur. She explained that the award had two parts: one addressing support, which was represented by the proposal that Mother had submitted to the arbitrator at the beginning of arbitration; and another addressing possession, which was represented by the two paragraphs drafted by the arbitrator. Mother argued that the trial court could give effect to the support portion of the award because the parties had a valid agreement to arbitrate that issue. As for the possession portion, Mother argued that the trial court should treat the arbitrator's two paragraphs as just a mediator's proposal, which the parties were free to reject. Mother moved the trial court to confirm just the support portion of the award, but the trial court denied that motion.

The parties then proceeded to a trial on the merits, but the only matter litigated was Father's counter-petition to modify the terms of his possession. The parties abandoned all other pending claims, although Mother reserved the right to challenge the trial court's ruling on the arbitration award.

At the close of evidence, the trial court found that there was a change in circumstances and that Father was entitled to long-distance visitation. After denying several post-trial motions, the trial court signed a final judgment modifying the divorce decree with new terms of possession. Mother appealed from that final judgment.

## ISSUES PRESENTED

Mother complains of two issues. In her first issue, she argues that the trial court erred by not confirming the support portion of the arbitration award. In her second issue, she argues that the trial court erred by proceeding to trial on Father's counter-petition for modification.

Father responds to these issues in his brief, but he also raises a jurisdictional challenge, arguing that Mother's notice of appeal is untimely. We address the jurisdictional issue first.

## APPELLATE JURISDICTION

To invoke an appellate court's jurisdiction, a party must file a written notice of appeal with the trial court clerk. *See* Tex. R. App. P. 25.1(a)–(b). In most cases, the notice of appeal must be filed within thirty days of the final judgment. *See* Tex. R. App. P. 26.1. A shorter deadline applies if the appeal is accelerated. In those accelerated cases, the notice of appeal must be filed within twenty days of the judgment or order being appealed. *See* Tex. R. App. P. 26.1(b).

Believing that this appeal is accelerated, Father argues that Mother's notice of appeal is untimely because it was filed more than twenty days after the trial court vacated her arbitration award. Father's argument is mistaken on two points: (1) whether Mother's appeal is accelerated, and (2) what judgment or order she is appealing.

Accelerated appeals are defined in the Texas Rules of Appellate Procedure. They include "appeals from interlocutory orders (when allowed by statute)" and "appeals required by statute to be accelerated or expedited." *See* Tex. R. App. P. 28.1(a).

The trial court's order vacating the arbitration award is interlocutory, as Father correctly points out. However, Mother did not appeal from that interlocutory order. She appealed from the trial court's final judgment, and the interlocutory order vacating the arbitration award merged into that final judgment. *See Roccaforte v. Jefferson County*, 341 S.W.3d 919, 924 (Tex. 2011) (holding that an interlocutory order merged into the final judgment).

Mother had a right under the Texas Arbitration Act ("TAA") to bring an interlocutory appeal from the trial court's vacatur order before the case proceeded to a trial on the merits and before a final judgment was rendered. *See* Tex. Civ. Prac. & Rem. Code § 171.098(a); *Branch Law Firm L.L.P. v. Osborn*, No. 14-14-00892-CV, —— S.W.3d ——, ——, 2016 WL 444867, at *3 (Tex. App.–Houston [14th Dist.] Feb. 4, 2016, pet. denied). But the TAA did not require Mother to bring an interlocutory appeal. *Cf. Hernandez v. Ebrom*, 289 S.W.3d 316, 319 (Tex. 2009) (holding that Chapter 74 authorizes an interlocutory appeal, but does not mandate it). And Mother's failure to bring an interlocutory appeal does not mean that her timely appeal from the final judgment must be treated as accelerated, where the TAA does not require such appeals to be accelerated. *See* Tex. Civ. Prac. & Rem. Code § 171.098(b) ("The appeal shall be taken in the manner and to the same extent as an appeal from an order or judgment in a civil action.").

Mother filed her notice of appeal within thirty days of the trial court's final judgment. That is all that was required to invoke this court's jurisdiction. *See* Tex. R. App. P. 26.1. We therefore proceed to the merits of Mother's two appellate complaints.

## ARBITRATION AWARD

### I. Mother's Argument

A trial court must confirm an arbitration award unless grounds are offered for vacating, modifying, or correcting the award. *See* Tex. Civ. Prac. & Rem. Code § 171.087. One basis for modification occurs when the arbitrator has "made an award with respect to a matter not submitted to [her] and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted." *Id.* § 171.091(a)(2). When this provision applies, the trial court must modify the award and then confirm it as modified. *Id.* § 171.091(c).

Mother argues that the trial court should have acted under the authority of

this provision by confirming a modified award, rather than by vacating the award in full. More specifically, Mother argues that the trial court should have removed the possession portion of the award, thereby allowing the support portion to stand on its own. To prevail on this theory, Mother was required to show (A) that the parties submitted the support issue to the arbitrator, but not the possession issue; and (B) that the removal of the possession portion of the award can be achieved without affecting the merits of the support portion of the award. *Id.* § 171.091(a)(2). Whether Mother satisfied this burden is a legal question, subject to *de novo* review. *See Amoco D.T. Co. v. Occidental Petro. Corp.*, 343 S.W.3d 837, 844 (Tex. App.–Houston [14th Dist.] 2011, pet. denied) ("We review *de novo* a trial court's decision to confirm or vacate an arbitration award."). We begin our analysis by considering what issues were submitted to the arbitrator.

**A. The support issue was submitted for binding arbitration, but not the possession issue.**

 The arbitrator derives her power from the parties' agreement to arbitrate. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011). That agreement also limits the arbitrator's decision to "matters submitted therein either expressly or by necessary implication." *See Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959). Thus, when deciding whether an issue has been submitted to an arbitrator, we look to the agreement to arbitrate.

The parties' Arbitration Agreement incorporated the terms of their Rule 11 Agreement. The latter provided that two issues would be submitted to the arbitrator—support and possession—but the parties restricted how the arbitrator was to approach those issues. On the support is-

sue, the parties agreed that the arbitrator would make a binding decision by selecting one of two proposals given to her. But on the possession issue, the Rule 11 Agreement provided:

> The one area which will not be subject to binding arbitration is the issue of visitation for the [parties'] children. The parties ask that [the arbitrator], after in camera meeting with the children, propose a mediator's proposal to deal with visitation schedule over holidays, etc. It is understood that [Father] is seeking an amendment to the AID relating to his [living] more than 100 miles from their domicile. [Mother] does not dispute the availability of such an amendment for a period of time when he lives more than 100 miles away, but suggests that the parties may want to consider a practical, realistic arrangement for visitation with the children as opposed to a standing order that the parties won't be in a position to honor.

Neither party disputes the meaning of this limiting provision. Father argued in the trial court that the arbitrator was not allowed to make a binding decision on the possession issue. Mother also agreed with that point, even though she originally sought confirmation of the arbitrator's entire award. Under the plain terms of the Rule 11 Agreement, which was incorporated into the parties' Arbitration Agreement, we conclude that the possession issue was not supposed to be submitted for binding arbitration.

Because the parties submitted the support issue for binding arbitration but not the possession issue, Mother has met her initial burden of showing that the arbitrator exceeded her authority by deciding the possession issue and by making "an award with respect to a matter not submitted to [her]." *See* Tex. Civ. Prac. & Rem. Code § 171.091(a)(2). We now consider whether

Mother has met her additional burden of showing that "the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted." *Id.*

**B. The award can be corrected by removing the possession portion.**

██ The Rule 11 Agreement reveals that the support issue and the possession issue were intended to be discrete, both in their subject matter and in the manner in which they were to be incorporated into the award. The support issue was to be based on one of two proposals drafted by the parties and selected by the arbitrator. By the terms of this "baseball style" arbitration, the arbitrator did not have the authority to change any of the terms contained in the two proposals. Her power was limited to picking one of the two proposals.

By contrast, the possession issue was not to be decided through binding arbitration at all. Instead, it was to be submitted for a nonbinding recommendation, which was to be made in the first instance by the arbitrator sitting in the limited capacity as a mediator. The arbitrator was not restricted in the scope of what recommendations she could make on the issue of possession. Thus, the arbitrator could propose anything she wanted, as long as the parties remained free to reject her recommendations.

The arbitrator accepted Mother's proposal on the support issue, and the arbitrator recited that decision in her award. But also in the award, the arbitrator made orders, instead of recommendations, on the issue of possession. Though erroneous, this possession portion is easily severable.

The possession portion occupies a completely separate part of the award from the support portion. Their terms are not intertwined, as they were drafted by different authors at different times for different subjects. Nothing in the record indicates that the merits of the support portion would be affected if a court were to excise the possession portion from the award. Indeed, by bargaining for the right to reject recommendations on the possession issue (if recommendations instead of orders had been made), the parties clearly envisioned a scenario where the support portion would be able to stand on its own.

We conclude that Mother has satisfied her burden of showing that the award should have been corrected by excising the possession portion and leaving intact the support portion.

**II. Father's Response**

Father attacked the arbitration award on several grounds in the trial court, but on appeal, he does not appear to have directly confronted Mother's argument that the award could be modified under Section 171.091(a)(2) of the Texas Civil Practice and Remedies Code. Nevertheless, if we were to liberally construe his brief, Father seems to make the following points: (A) the initial award should not be modified because a modified award would still be excessive; (B) the initial award was properly vacated in full because of the arbitrator's evident partiality; (C) the initial award should not be modified because a modified award would violate Texas law; and (D) there was no meeting of the minds on the Arbitration Agreement. We address these points in the order that they have been presented.

**A. Whether a modified award would still be excessive.**

Father brings a lengthy assortment of arguments for challenging the arbitrator's award. His first six arguments generally maintain that Mother's proposal was so extreme on the support issue that the arbi-

trator exceeded her authority by selecting it. Continuing with this premise, Father appears to argue that the trial court could not confirm a modified award that accepted Mother's extreme proposal.

There are individual reasons for rejecting Father's arguments, but we begin with a single observation that is applicable to all six. By the plain terms of the Arbitration Agreement, the arbitrator was asked to select one of the two proposals given to her, without making any changes to the proposal actually selected. The arbitrator did exactly what the Arbitration Agreement empowered her to do—she picked a proposal. Perhaps Father believed that Mother's proposal was so extreme that the arbitrator would have chosen differently, but his miscalculation does not change the fact that the Arbitration Agreement conferred the arbitrator with the power of choice. The arbitrator did not exceed her authority by then making a choice. *See IQ Holdings, Inc. v. Villa D'Este Condominium Owner's Ass'n, Inc.*, 509 S.W.3d 367, 376 (Tex. App.–Houston [1st Dist.] 2014, no pet.) (holding that the arbitrator did not exceed her authority where "the record demonstrates that the arbitrator performed the task the parties bargained to have her perform").

Father's arguments fail for additional reasons when we examine them on an individual level.

### 1. Possession in general.

In his first of six arguments, Father contends that Mother's proposal could not be accepted by the arbitrator in binding arbitration because that proposal addressed the issue of possession in general. Father argues that acceptance of Mother's proposal would run afoul of the provision in the Rule 11 Agreement, which said that the possession issue would not be subject to binding arbitration.

This argument has two flaws. First, Mother did not propose binding terms on Father's possession. Her proposal merely contained a paragraph stating that the final decree of divorce should be amended to reflect the recommendations of the arbitrator, who on that issue only would be sitting in the capacity as a mediator. Mother's proposal expressly contemplated that the parties would be free to reject these recommendations. Accordingly, this portion from Mother's proposal could not be binding in a way that runs afoul of the Rule 11 Agreement.

Second, Father submitted a proposal to the arbitrator that also contained terms and conditions regarding his possession. If Father's argument were true, then neither proposal could have been selected by the arbitrator. That result would be absurd.

In a related point, Father argues that Mother's proposal was excessive because it proposed a change to the final decree of divorce. Father insists that the arbitrator lacked the authority to modify the final decree of divorce because the Rule 11 Agreement only discussed changes to the AID.

Father's argument is based on a recital in the Rule 11 Agreement, which provides that "each side is seeking changes to the current AID in place." We do not understand this language to operate as a limitation on the arbitrator's authority. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding) (holding that any doubts regarding the scope of an arbitration agreement should be resolved in favor of arbitration). Had the parties intended a limitation, they could have expressed one in the same manner as their limitation on the possession issue.

We also note that Father proposed changes to the final decree of divorce in his own proposal that he submitted to the

arbitrator. As before, Father's argument would have defeated both parties' proposals, negating the entire purpose of the arbitration. We conclude that this argument fails. *Cf. Thomas v. Prudential Sec., Inc.,* 921 S.W.2d 847, 851 (Tex. App.–Austin 1996, no writ) (rejecting argument that the arbitration panel exceeded its authority by awarding attorney's fees where both parties had sought the recovery of attorney's fees from the panel).

### 2. Monetary penalties.

Father then complains about the following provision in Mother's proposal:

> In the event any party rejects the mediator's proposal then that party shall be responsible for all attorney's fees in a trial before the [trial court] on the issue of revisions to the Standard Possession Order. The party resisting the mediator's proposal, in other words, will bear the cost for each party to adjudicate this issue, regardless of the ultimate ruling on the issue.

In Father's view, this provision effectively coerces the parties to accept the mediator's proposal by threatening them with trial attorney's fees. Father argues that the arbitrator had no authority to impose such monetary penalties.

This argument is immaterial because the arbitrator did not make a mediator's proposal.

### 3. Attorney's fees.

Father's third argument involves the same challenged provision. Father believes that the challenged provision violated the terms of the Rule 11 Agreement, wherein the parties agreed that "each side will bear its own attorney's fees." In light of that agreement, Father argues that the arbitrator had no authority to accept a proposal that would make one party bear the attorney's fees of both sides.

This argument fails for two reasons. First, as we explained above, the challenged provision is not effective because the arbitrator did not make a mediator's proposal. Second, even if the challenged provision were effective, it does not violate the terms of the Rule 11 Agreement. The challenged provision of Mother's proposal addresses attorney's fees that arise during trial, while the Rule 11 Agreement addresses attorney's fees that arise during arbitration. Thus, there is no conflict.

### 4. Interim relief.

Father next complains about the following provision in Mother's proposal, which addresses interim relief: "Between the date of this order and the date of final adjudication, the mediator's proposal will be adopted as if agreed by the parties." Father argues that the arbitrator was not empowered to award interim relief, and that she exceeded her authority by selecting a proposal that awarded interim relief.

This argument fails for two familiar reasons. First, this provision is not effective because the arbitrator did not make a mediator's proposal. Second, Father's own proposal contained a provision that also awarded interim relief.

### 5. Notice and reimbursement.

█ In his fifth argument, Father complains about a paragraph in Mother's proposal on the support issue that imposes specific terms on his possession. The paragraph reads as follows:

> [Father] will give 10 days notice if he is not going to exercise a period of possession, whether in part or in whole. If he is only exercising part of a particular period of possession, his notice must include specific notice of date and time he will pick up and return the children. If he does not do so, he will reimburse [Moth-

er] for her expenses to cover any necessary child care over that particular period of possession. Further, [Father] is bound by any of his periods of possession for which [Mother] has given him 2 weeks notice that she will be travelling; he may not decline to exercise such periods of possession.

In a point similar to his first argument, Father argues that the arbitrator exceeded her authority by accepting Mother's proposal because this paragraph decided an issue relating to possession, in violation of the Rule 11 Agreement.

The arbitrator's authority was defined by the Rule 11 Agreement, which said, "The one area which will not be subject to binding arbitration is the issue of visitation for the [parties'] children." The Rule 11 Agreement then identified two specific matters that the arbitrator should address in her limited capacity as a mediator: holiday schedules and long-distance visitation. The two matters addressed in Mother's support proposal—notice and reimbursement—may generally touch on matters relating to possession, but they do not clearly infringe on the limits established by the Rule 11 Agreement. Applying the rule that we resolve any doubts regarding the scope of an arbitration agreement in favor of arbitration, we conclude that the arbitrator did not exceed her authority. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753.

### 6. Missing exhibit.

In his sixth point, Father argues that the arbitrator could not accept Mother's proposal because it referred to the parties' standing possession order, but that order was not attached to Mother's proposal as an exhibit. Because the exhibit was missing, Father believes that Mother's proposal was incomplete and that the arbitrator's only viable option was to choose his own proposal.

Once again, Father has made an argument that would defeat the entire arbitration proceeding. Both Mother and Father referred to the standing possession order in their proposals, and neither attached the order as an exhibit.

### B. Whether vacatur was appropriate because of evident partiality.

■ As an alternative response to Mother's request for modification, Father argues that the arbitration award should remain vacated in full because the arbitrator was biased against him. Father bases this argument primarily on the arbitrator's nondisclosure of a social relationship she had with Mother's counsel.

■ A trial court must vacate an arbitration award if the rights of a party were prejudiced by "evident partiality by an arbitrator appointed as a neutral arbitrator." *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(2)(A). An arbitrator exhibits evident partiality if she "does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *See Burlington N. R.R. v. TUCO Inc.*, 960 S.W.2d 629, 636 (Tex. 1997). "Information that is trivial will not rise to this level and need not be disclosed." *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 525 (Tex. 2014).

In his motion to vacate, Father alleged that a "possible close social relationship existed between the arbitrator and Mother's counsel." Father referred to information that Mother's counsel was once a student at a university where the arbitrator formerly worked as a director of student activities.

Mother's counsel filed a response, explaining that he had met the arbitrator when he was a student—more than thirty years ago—but that he had not seen the

arbitrator for many years leading up to the arbitration. Mother's counsel also explained that the few social dealings he had with the arbitrator were "serendipitous encounters" at events hosted by his alma mater.

As the party seeking vacatur of the arbitration award, Father had the burden of proving his claim of evident partiality. *See Builders First Source–S. Tex., LP v. Ortiz*, 515 S.W.3d 451, 458, (Tex. App.–Houston [14th Dist.] 2017, pet. denied.). Father did not meet this burden because he produced no evidence at all on this point. At most, the record suggests the existence of a remote and trivial relationship between the arbitrator and Mother's counsel. The arbitrator's nondisclosure of that relationship would not, to an objective observer, create a reasonable impression of the arbitrator's partiality.

Father also argues that the arbitrator's partiality is evidenced by her award and her selection of Mother's extreme proposal. The characterization of Mother's proposal as "extreme" is subjective, and without more, the award itself does not demonstrate the arbitrator's partiality. *Cf. Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam) ("Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

Father then refers to an amended award that the arbitrator attempted to issue *sua sponte*. The attempted amendment was made after the trial court rendered its vacatur decision but before the trial court signed its final judgment. In the attempted amendment, the arbitrator removed her possession orders and converted them into recommendations. Consistent with the initial award, the arbitrator still accepted Mother's proposal on the support issue.

The attempted amendment did not actually supplant the initial award because the arbitrator lacked the authority to make the amendment. Under the TAA, an arbitrator can make a modification or correction to her award only on the application of a party or on the submission to the arbitrator by the trial court. *See* Tex. Civ. Prac. & Rem. Code § 171.054(b). Neither condition occurred here, a point admitted by both parties, but Father highlights this break in procedure as a sign of evident partiality.

Father emphasizes the coincidental timing and the unexplained origin of the attempted amendment—the arbitrator issued the attempted amendment one day after the trial court vacated her initial award, and without any written motion from either party. Father speculates that there must have been an *ex parte* communication between the arbitrator and Mother or Mother's counsel immediately following the vacatur order.

Father presented no evidence that any person made an *ex parte* communication with the arbitrator. This purely speculative theory does not provide a basis for vacating the arbitrator's award.

## C. Whether a modified award would violate Texas law.

Father's next set of arguments returns to the subject of Mother's proposal. Father essentially argues that the trial court could not confirm an award based on that proposal because Mother requested relief that violates Texas law. Father focuses on three particular aspects of Mother's proposal:

- The first aspect pertains to a provision requiring Father to give $20,000 to Mother. The provision states that the money is to be spent on the purchase of a car for the parties' younger child. In the event that money was left over after the pur-

chase, Mother agreed to return the excess to Father. Father argues that this provision acts as an unlawful relitigation of the parties' property division and as a divestiture of his separate property.

- The second aspect pertains to penalty provisions that would require Father to pay $100 for failing to comply with various support obligations. Father argues that these provisions are unlawful because they are usurious.
- The third aspect pertains to provisions that eliminate contractual alimony and increase child support. Father argues that these provisions unlawfully convert contractual alimony into child support, far in excess of what the Family Code guidelines would allow. Father also complains that these provisions extend his support obligations beyond each child's age of majority.

All of these arguments fail. The parties' Rule 11 Agreement expressly provided that the arbitrator could grant relief that a court could not. The TAA similarly provides that the trial court cannot vacate or refuse to confirm an award simply because the relief granted by the arbitrator "could not or would not be granted by a court of law or equity." *See* Tex. Civ. Prac. & Rem. Code § 171.090.

**D. Whether there was a meeting of the minds.**

In his final point, Father argues that he is entitled to revoke the Arbitration Agreement because the parties did not have a meeting of the minds.

The phrase "meeting of the minds" refers to the parties' mutual understanding and assent to enter into their agreement. *See Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 455 (Tex. App.–Dallas 2012, pet. denied). It is an essential element to the formation of a contract. *See 2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 449 (Tex. App.–Houston [14th Dist.] 2012, pet. denied).

Whether the parties have come to a meeting of the minds is based on the objective standard of what they did and said. *See Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.–Houston [14th Dist.] 2000, no pet.). The parties' subjective thoughts and beliefs do not control. *Id.* Where a meeting of the minds is contested, as it is here, determination of the existence of a contract is a question of fact for the finder of fact to decide. *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App.–Houston [14th Dist.] 2010, pet. denied).

As the party challenging the existence of a contract, Father had the burden of proving and securing a finding that there was no meeting of the minds when the parties signed the Arbitration Agreement. Father did not meet his burden. He produced no evidence on this point, and the issue was not tried.

Nevertheless, Father appears to argue that, as a matter of law, there could be no meeting of the minds because the Arbitration Agreement is internally inconsistent. Father points to four alleged conflicts within the agreement. But at most, these conflicts would demonstrate that the agreement is ambiguous. If an agreement contains an ambiguity, the interpretation of the agreement becomes a question of fact. *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). Father produced no evidence about how the agreement should be interpreted, and on appeal, he has not cited to any authority demonstrating that an agreement can be revoked simply because it contains an ambiguity.

We conclude that Father has not shown any reason why the trial court should not have modified the arbitrator's initial award.

## III. Remedy

Subject to a best-interest determination, the trial court should have modified the award by omitting the possession portion and allowing the support portion to stand.[1] See Tex. Fam. Code § 153.0071(b) ("If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child.").

In the trial court below, Father requested a best-interest hearing in the event that his other grounds for vacatur were overruled. Father has requested the same relief in this court, and during oral argument, Mother did not express opposition to that request. Accordingly, we will not render judgment confirming the modified award ourselves. We will reverse the judgment and remand for a hearing to determine whether confirmation of the modified award is in the best interest of the children.

## TRIAL ON THE MERITS

In her second issue, Mother argues that the trial court erred by proceeding to a trial on the merits on Father's counter-petition for modification of possession. Mother raises three points in support of her argument.

■■■■ In her first point, Mother contends that once an arbitration award is vacated, the trial court has no discretion but to order the parties back to arbitra-

1. Specifically, the following language should have been excised from the award:

The best interest of the children, [S.M.H.] and [W.H.H.], will be served by having a healthy and loving relationship with their father. The father now resides in Dallas and the visitation language should be amended immediately to reflect the more than 100 miles away visitation. The father is ordered to participate in therapy with a psychologist for six months, starting immediately, (within the next two weeks) for his own family of origin issues, and parenting skills, and then to participate in therapy with each of the children in an attempt to rehabilitate the relationship with his children. If the father commences the therapy and continues to participate in this therapy, during the time of the father's initial therapy, for six months, his visitation will be one time per month in Houston. If the children have some extracurricular activity during his visits, he shall work with them to help them maintain their participation in such activities i.e. attend practices or games to support his children.

After the completion of the 6 months of continual therapy (whenever that occurs), the father will begin an SPO for someone who resides more than 100 miles away. The parents will communicate by way of Our Family Wizard with no less than 10 days notice of the father's inability to exercise his visitation. The mother is ordered to keep the father apprised of any and all college visits and schools being considered by the children, including the names of the schools the children are attending, sports they are playing, calendars of games of any sports, along with their grades, scores on SAT's or ACT's. All this communication will occur through the OFW. Both parents are ordered to attend Building New Beginnings classes at the Escape Center or its equivalent in Dallas. The mother is ordered to offer the father first right of refusal if she is going to be away from the children for more than two days. The mother is ordered to encourage the children to participate in the therapy with their father, and produce the children for therapy between the father and the children. The holidays will be split and all visitation is to take place in Houston. All activities of the children should be posted along with all other school information on OFW and if the father finds himself able to attend activities of the children, he should be encouraged to engage with his children in this manner. The father is to initiate therapy with his children and make all appointments for when he is able to be in Houston. The mother is to make the children available for the therapy and encourage their participation.

tion. We disagree. The TAA provides that the trial court "may order a rehearing" before the arbitrator after the arbitration award is vacated. *See* Tex. Civ. Prac. & Rem. Code § 171.089. This language is permissive, not mandatory. *See Tri–Star Petrol. Co. v. Tipperary Corp.*, 107 S.W.3d 607, 615 (Tex. App.–El Paso 2003, pet. denied) ("This statute thus did not require the trial court to order re-arbitration."). We are aware of no provision in the TAA that precludes the trial court from proceeding to a trial on the merits after an arbitration award has been vacated. And as discussed above, the portion of the award that should have been vacated addresses an issue—possession—that the parties expressly agreed would not be subject to arbitration.

■ In her second point, Mother complains that she was never served by citation with Father's counter-petition for modification. Mother acknowledges that she was aware that Father had sought to modify the terms of his possession, but without formal notice of Father's pleading, Mother argues that she should not have been forced to proceed to trial.

Mother did not object to the lack of service when she made her appearance, and she allowed Father's counter-petition to be tried by consent. *See In re R.J.P.*, 179 S.W.3d 181, 183 n.1 (Tex. App.–Houston [14th Dist.] 2005, no pet.); *Cain v. Cain*, No. 14-07-00114-CV, 2007 WL 4200638, at *5 (Tex. App.–Houston [14th Dist.] Nov. 29, 2007, no pet.) (mem. op.). We conclude that she has waived any complaint about the lack of service. *See In re M.G.N.*, 491 S.W.3d 386, 407 (Tex. App.–San Antonio 2016, pet. denied); *McEntire v. McEntire*, 706 S.W.2d 347, 349 (Tex. App.–San Antonio 1986, writ dism'd).

■ In her third and final point, Mother complains that the trial court denied an oral motion for continuance that she made just before the trial on the mer-

its. We review the trial court's denial of a motion for continuance for an abuse of discretion. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court abuses its discretion only if its ruling was arbitrary, unreasonable, or without reference to any guiding rules or principles. *See Daugherty v. Jacobs*, 187 S.W.3d 607, 618 (Tex. App.–Houston [14th Dist.] 2006, no pet.).

Motions for continuance are governed by Rule 251 of the Texas Rules of Civil Procedure. That rule provides that a motion for continuance shall not be granted except for sufficient cause supported by an affidavit, consent of the parties, or by operation of law. Mother made an oral request for a continuance, unsupported by an affidavit, and the record does not reveal an agreement by the parties or an argument that a continuance should have been granted by operation of law. Absent one of these grounds, we must presume that the trial court did not abuse its discretion by denying the requested continuance. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *W.W. Webber, L.L.C. v. Harris Cnty. Toll Road Auth.*, 324 S.W.3d 877, 880 (Tex. App.–Houston [14th Dist.] 2010, no pet.).

We overrule Mother's second issue.

## CONCLUSION

We reverse the portion of the trial court's judgment that vacated the arbitration award. The trial court should have modified the award, and we remand the case to that court for it to determine whether confirmation of a modified award as outlined herein would be in the best interest of the children. We affirm the remaining portion of the trial court's judgment.