**Affirmed and Memorandum Opinion filed December 14, 2017.**



In The

# Fourteenth Court of Appeals

NO. 14-15-00353-CV
NO. 14-16-00992-CV

**ALI RASSOULI, Appellant/Cross-Appellee**

**V.**

**NATIONAL SIGNS HOLDING, LLC, NATIONAL SIGNS, LLC, AND LOUIS GIRARD, Appellees/Cross-Appellants**

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2014-42950**

## MEMORANDUM OPINION

In this appeal from a judgment confirming an arbitration award, the issues are whether the trial court erred by failing to modify the award and its own judgment; and whether we, in our own discretion, should grant a motion for sanctions under Rule 45. Finding no error, we affirm the trial court's judgment and deny the motion for sanctions.

# BACKGROUND

Ali Rassouli founded a successful company, which he later sold to National Signs Holding, LLC. The sale culminated in the execution of two contracts that are pertinent here: first, an Interest Purchase Agreement, which conveyed the old company to the new company; and second, an Employment Agreement, which established the terms of Rassouli's position as an executive with the new company.

Within months of the conveyance, Rassouli was terminated from his executive position. Rassouli sued the new company, a related entity, and a related individual (collectively, "National"). National countersued, and the parties mutually agreed to submit their claims to binding arbitration.

The arbitrator issued an award addressing multiple subjects. We highlight only two of those subjects here.

First, the arbitrator found that National had terminated Rassouli without cause, which meant that Rassouli was entitled to certain compensation. The arbitrator articulated a formula for arriving at this compensation, but she did not determine the dollar amount that was due under that formula. Instead, the arbitrator left the parties to determine the dollar amount for themselves. The arbitrator also provided that if the parties could not stipulate to the dollar amount within thirty days, then she could resolve the dispute on the submission of written evidence.

Second, the arbitrator found that Rassouli was bound by valid non-competition obligations under both the Interest Purchase Agreement and the Employment Agreement. Regarding the Interest Purchase Agreement, the arbitrator declared that the non-competition obligation ran for the five-year period between January 1, 2012 and January 1, 2017. Regarding the Employment Agreement, the

2

arbitrator declared that the non-competition obligation ran for the two-year period between August 26, 2012 and August 26, 2014.

Neither side was satisfied with the award. National filed an application with the trial court to modify the award, arguing that the arbitrator had made an evident miscalculation or an evident mistake concerning Rassouli's non-competition obligation under the Employment Agreement. National asserted that the non-competition period should run for five years under the plain terms of that agreement, rather than the two years that were cited in the award. National asked the trial court to correct that portion of the award or, in the alternative, to delete that portion of the award, claiming that the duration of the non-competition obligation had not even been submitted to the arbitrator.

Rassouli filed an application with the trial court that also focused on the non-competition obligation. Citing a separate provision in the Employment Agreement, Rassouli argued that the non-competition obligation was nullified when National terminated him without cause. Rassouli accordingly asked the trial court to vacate or modify the award, or simply to refer the matter back to the arbitrator so that she could correct the award herself.

Both sides moved for summary judgment, with each side arguing that the other's application should be dismissed with prejudice because the relief requested was unavailable as a matter of law. The trial court granted both motions on separate dates and in separate orders. The second order did not contain language stating that it finally disposed of all parties and claims, but when combined with the first order, it appeared to have that effect. Indeed, Rassouli filed a notice of appeal, apparently believing that the second order was final and appealable.

Before the trial court lost its plenary power, National moved the trial court to enter a new judgment that "complie[d] with the controlling statutes." In a footnote,

3

National referred to two statutes under the TAA, but National did not explain what those statutes required or even how the trial court had failed to comply with them. National appeared to suggest that the trial court still needed to confirm the arbitration award, which both statutes mandate under certain circumstances.

The trial court granted National's motion and signed an order saying that it "will enter a final judgment that . . . complies with the controlling statutes." Despite that order, the trial court did not enter a new judgment or confirm the award. Thus, the parties proceeded with their appeal.

In his brief before this court, Rassouli argued that the arbitration award was defective because it was not final. This point focused on the compensation issue, which Rassouli had not challenged in his application to the trial court. Rassouli argued that the award contained "a blank" because the dollar amount had not been determined. Rassouli also explained that the parties had attempted to resubmit the compensation issue to the arbitrator, but the arbitrator expressed reluctance to do anything further without a court order authorizing her jurisdiction.

National responded that the compensation issue was ministerial, and that an appellate court could resolve the issue on its own. In a cross-appellant's brief, National argued that the trial court had erred by failing to modify the portion of the award addressing Rassouli's non-competition obligations. National also argued that the trial court had erred by failing to confirm the award as required by the TAA.

The case submitted with oral argument before a different panel of this court, and that panel promptly abated the appeal because it was uncertain about its own appellate jurisdiction. The panel requested the trial court to clarify its intent to finally dispose of all parties and claims through its summary-judgment order. The panel instructed the trial court that it could modify this order by expressly making it final and appealable, if modification were necessary. The panel also indicated that the

4

trial court could consider any additional requests for relief presented by the parties, including a motion to confirm the arbitrator's award.

Back before the trial court, National moved to enter a new judgment confirming the award, and Rassouli moved to refer the case back to the arbitrator. The trial court granted Rassouli's motion. In its referral order, the trial court authorized the arbitrator to make a final determination on the compensation issue and on "any other issues the parties feel needs clarification."

The parties submitted their evidence on the compensation issue to the arbitrator. In addition to that evidence, National submitted a request to the arbitrator that she modify the portion of her earlier award regarding Rassouli's non-competition obligation under the Employment Agreement.

After taking those matters under advisement, the arbitrator issued a new award. Regarding the compensation issue, the arbitrator credited Rassouli's evidence and granted him the exact dollar amount that he had requested. Regarding the non-competition issue, the arbitrator made the following declaration:

> The Employment Agreement and Interest Purchase Agreement require that the period of non-competition will be the later of five years after the Closing Date or two years after [Rassouli's] employment is terminated. Here, the termination of [Rassouli] took place in July, 2012; therefore, his period of [non-competition] is 5 years after the effective date of closing, or January 1, 2017.

The parties returned to the trial court, where Rassouli moved to confirm the new award and National moved to modify it. National argued that the arbitrator had made an evident miscalculation or evident mistake in its description of the Closing Date, which was when the non-competition period was set to begin. National asked the trial court to correct this date, or in the alternative, to just delete this portion of the award.

The trial court granted Rassouli's motion, denied National's motion, and entered a final judgment confirming the new award. National then moved to modify that judgment, asking the trial court to "clearly and adequately set forth the relief granted by the Award." No action appears to have been taken on that motion.

National now brings this latest appeal, challenging the trial court's failure to modify both the award and the judgment confirming the award. Rassouli, apparently satisfied after his return to the arbitrator, does not challenge any part of the trial court's new judgment. Instead, he argues that National should be sanctioned because its appeal is frivolous.

## MOTION TO MODIFY THE ARBITRATION AWARD

When considering a trial court's ruling on a motion to modify an arbitration award, our review is de novo. *See Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 70 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Even under a de novo standard, the scope of our review is "extraordinarily narrow." *See E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). We presume that an arbitration award is valid, and we treat the award as having the same effect as a judgment from a court of last resort. *See CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). Thus, we will not disturb an award even if, in our view, the arbitrator misapplied the law. *See D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Under the TAA, a trial court may only modify or correct an award if:

(1) the award contains:

    (A) an evident miscalculation of numbers; or

    (B) an evident mistake in the description of a person, thing, or property referred to in the award; [or]

6

(2) the [arbitrator has] made an award with respect to a matter not submitted to [her] and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted.

Tex. Civ. Prac. & Rem. Code § 171.091(a).

National moved to modify the award based on both of these grounds. We address each ground separately, but in reverse order, because the first ground assumes that the arbitrator had the authority to decide the issue submitted to her.

***Matter Not Submitted.*** National argues that the trial court should have modified the award by excising the portion addressing the non-competition issue because that issue was never submitted to the arbitrator.

When considering whether an issue has been submitted to the arbitrator, we look at the agreement to arbitrate. *See In re S.M.H.*, 523 S.W.3d 783, 789 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The arbitrator derives her power from that agreement, which limits her decision to the "matters submitted therein either expressly or by necessary implication." *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011); *Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 408 (Tex. 1959).

In their arbitration agreement, the parties agreed that the arbitrator would have the power to resolve "any dispute . . . arising under or relating to this Agreement or any other matters existing between them, including the agreements identified below." The arbitration agreement then identifies the Interest Purchase Agreement and the Employment Agreement as two of the agreements existing between the parties.

The arbitration agreement does not specifically identify the disputes between the parties, but it does provide a mechanism for submitting those disputes to the

7

arbitrator. The agreement says: "Either party to this Agreement may submit any dispute that is subject to arbitration by giving written notice to the other party with a copy to [the arbitrator]."

National invoked this provision on at least two separate occasions: the first occurring before the initial award; and the second occurring before the amended award, just after the trial court referred the parties back to arbitration. On that second occasion, National sent a letter to the arbitrator complaining about her initial award, which said that Rassouli's non-competition obligation under the Employment Agreement lasted for the two-year period between August 26, 2012 and August 26, 2014. Believing that both the duration and the dates were wrong, National requested the arbitrator to extend the period to five years and "to modify the date on which [Rassouli's] non-compete obligations under the Employment Agreement expire to the correct date, April 12, 2017." By this letter, National plainly submitted the term of Rassouli's non-competition obligation to the arbitrator for determination.

Nevertheless, National argues that this issue was not submitted to the arbitrator, citing only the letter that was sent before the initial award. That argument is immaterial because this appeal concerns the amended award, not the initial award.

***Evident Miscalculation or Evident Mistake.*** As an alternative basis for modification, National argues that the arbitrator made an evident miscalculation or evident mistake by beginning Rassouli's period of non-competition on January 1, 2012, which was the effective date of closing, rather than on April 12, 2012, which was the actual date of closing. This argument is based on an interpretation of the parties' two agreements.

National starts with the Employment Agreement, which provides that Rassouli's non-competition obligation ends "on the date which is the later of five

8

years after the Closing Date (as defined in the Interest Purchase Agreement) or two years after [Rassouli's] employment with the Company terminates for any reason."

Believing that the five-year period applies, National then turns to the Interest Purchase Agreement for a definition of "Closing Date," which appears in the following provision:

> This Agreement, and transfer of beneficial title to the Purchased Interests, shall be effective on the Effective Date, even though completion and Closing occurs after that date. Consummation of the transactions contemplated by this Agreement (the "*Closing*") shall take place at the offices of Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, TX 77002 at 10:00 a.m., local time, on April 12, 2012, or such other date and time as the Parties shall otherwise agree. The date upon which the Closing occurs is referred to herein as the "*Closing Date*."

After reciting these contractual provisions, National presents the entirety of its appellate argument in just two sentences, which we reproduce here:

> The arbitrator applied the effective date of the contract instead of the Closing Date; this constitutes an evident miscalculation that this Court can correct under Section 171.091(a)(1)(A) of the Texas Civil Practice & Remedies Code, and not a substantive determination of the parties' rights. Likewise, or alternatively, calculating the five-year period from the effective date of the contract instead of the Closing Date constitutes an "evident mistake" that this Court can correct under Section 171.091(a)(1)(B) of the Texas Civil Practice & Remedies Code.

As can be seen from this reproduction, National's argument relies on only two statutory provisions for authority. We overrule National's argument because, under the plain language of those provisions, neither applies.

Section 171.091(a)(1)(A) requires the modification of an award containing an evident miscalculation of *numbers*. *E.g.*, *Sydow v. Verner, Liipfert, Bernhard, McPherson & Hand, Chartered*, 218 S.W.3d 162, 169–70 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (the arbitrator made an evident miscalculation of numbers

9

when the arbitrator expressly awarded damages and interest, but failed to include the interest amount in the award's final summation). National's complaint here is about dates, not numbers. Even if this case involved an evident miscalculation of numbers, National's argument would still fail because National did not produce a complete record of the arbitration proceedings, which is necessary to establish the miscalculation. *See Riha v. Smulcer*, 843 S.W.2d 289, 293 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (holding that an evident miscalculation of numbers "must be clear, concise and conclusive from the record"); *see also Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 267 (Tex. App.—Houston [14th Dist.] 1995, no writ) ("When a non-prevailing party seeks to modify or vacate an arbitrator's award, he bears the burden to bring forth a complete record that establishes his basis for relief.").

As for National's other argument regarding Section 171.091(a)(1)(B), that provision only requires the modification of an award containing an evident mistake in the *description* of a thing. National's complaint here is that the arbitrator misinterpreted the Closing Date, not that she mistakenly described the Closing Date. Even if we were to agree that the arbitrator's interpretation of the Closing Date were erroneous, that type of error provides no basis for disturbing the award. *See Perry Homes v. Cull*, 258 S.W.3d 580, 607 (Tex. 2008) ("If arbitrators simply misinterpret a contractual clause such as the reimbursement clause, that type of error is not one which will justify setting aside an award."); *Denbury Onshore, LLC v. Texcal Energy S. Tex., L.P.*, 513 S.W.3d 511, 520 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits."); *Patel v. Moin*, No. 14-15-00851-CV, 2016 WL 4254016, at *5 (Tex. App.—Houston [14th Dist.] Aug. 11,

2016, pet. denied) (mem. op.) ("These contentions provide no basis for reversal because, at most, they assail the arbitrator's reasoning as being legally erroneous or internally inconsistent. Contentions that the arbitrator misinterpreted the contract or misapplied the law provide no basis for disturbing an arbitration award.").

## MOTION TO MODIFY THE JUDGMENT

In its next issue, National argues that the trial court erred by failing to modify its own judgment to expressly state the relief granted in the award. Once again, National condenses its entire argument into just two sentences:

> [National] also moved the trial court to modify the judgment to address the parties' apparent confusion over the relief afforded to [Rassouli] under the amended award. The trial court should have modified its judgment to clarify by decretal language the relief granted to the parties.[1]

In its main brief, National does not explain what was meant by "apparent confusion," nor does National identify what decretal language the trial court should have given. However, in a reply brief, National expands on its argument by providing some factual context. National asserts that, after the trial court confirmed the award, the parties disagreed about how much money was actually owed to Rassouli after interest, offsets, and other liabilities. But again, National offers no suggestion as to what specific decree that the trial court should have made.

The trial court's judgment contains a decree confirming the arbitration award. The trial court complied with the TAA by making that decree. *See* Tex. Civ. Prac. & Rem. Code § 171.087 ("Unless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of

---

[1] Record citation omitted.

11

a party, shall confirm the award."). National has supplied no authority for showing that this decree is somehow erroneous or insufficient.

A brief must contain a clear and concise argument, with appropriate citations to authorities. *See* Tex. R. App. P. 38.1(i). Because National has not cited to any authorities, statutory or otherwise, we could not grant relief to National without making legal arguments on its behalf, which we decline to do. We overrule National's complaint as inadequately briefed.

## MOTION FOR SANCTIONS

If we determine that an appeal is frivolous, we have the discretion to award the prevailing party just damages. *See* Tex. R. App. P. 45; *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc). We exercise such discretion "with prudence, caution, and after careful deliberation," imposing sanctions only when the circumstances are "truly egregious." *See Baker Hughes Oilfield Operations, Inc. v. Hennig Prod. Co.*, 164 S.W.3d 438, 448 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Such circumstances include failing to present a complete record, raising unpreserved errors that were not asserted in the trial court, failing to file a response to a request for appellate sanctions, and filing an inadequate brief. *See Tate v. E.I. Du Pont de Nemours & Co.*, 954 S.W.2d 872, 875 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

Rassouli argues that National is deserving of sanctions because National did not produce a record of the arbitration proceedings, National knew that the arbitrator's award could not be disturbed on a simple mistake of law, and National engaged in litigation tactics to delay the execution of the award.

Although National failed to produce a record of the arbitration proceedings and its brief is inadequate in certain respects, National has not attempted to raise new

issues on appeal, and National responded to Rassouli's motion for sanctions. Without commenting on whether National's appeal is frivolous, we do not believe that egregious circumstances are present here, and we deny the motion for sanctions. *See Long Lake, Ltd. v. Heinsohn*, No. 14-09-00613-CV, 2010 WL 1379979, at \*4 (Tex. App.—Houston [14th Dist.] Apr. 8, 2010, no pet.) (mem. op.).

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Brown, and Wise.