# NO. 12-19-00160-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR THE* | *§* | *APPEAL FROM THE* |
| *BEST INTEREST AND PROTECTION* | *§* | *COUNTY COURT AT LAW* |
| *OF T.M.* | *§* | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

T.M. appeals from an order authorizing the administration of psychoactive medication. In three issues, he challenges the denial of his motion for continuance, the denial of his request for a jury trial, and the legal and factual sufficiency of the evidence. We affirm.

## BACKGROUND

T.M. was committed to Rusk State Hospital pursuant to an order for in patient mental health services under Chapter 46C of the code of criminal procedure, not guilty by reason of insanity. When T.M. refused to voluntarily take psychoactive medication, the State petitioned the court for an order to administer psychoactive medications to T.M. On April 12, 2019, Dr. Jill Pontius, T.M.'s treating physician, signed an application to order the administration of psychoactive medications.

After a hearing, the trial court signed an order authorizing the administration of psychoactive medication – forensic, which found (1) the allegations in the application are true and correct and supported by clear and convincing evidence, and (2) T.M. lacks the capacity to make a decision regarding the administration of said medication and treatment with the proposed medication is in T.M.'s best interest. The trial court authorized the Texas Department of State Health Services to administer antidepressants, antipsychotics, mood stabilizers, anxiolytics/sedative/hypnotics, and miscellaneous drugs. This appeal followed.

In his third issue, T.M. challenges the legal and factual sufficiency of the evidence to support the trial court's order to administer psychoactive medication. Specifically, he contends that the State failed to prove, by clear and convincing evidence, that he lacked the capacity to make a decision regarding administration of medication, and treatment with the proposed medications was in his best interest. We address this issue first because, if granted, it would afford the greatest relief.

## Standard of Review

Texas law requires that orders authorizing administration of psychoactive medication be supported by clear and convincing evidence. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a–1) (West 2017). Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *Id.*; *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Addington*, 588 S.W.2d at 570. This higher burden of proof elevates the appellate standard of legal sufficiency review. *Diamond Shamrock Ref. Co., L.P. v. Hall*, 168 S.W.3d 164, 170 (Tex. 2005); *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 622, 625 (Tex. 2004).

In reviewing a legal sufficiency claim, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the application were proven. *Id.* The reviewing court must consider whether the disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *Id.* If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief in the finding, the evidence is factually insufficient. *Id.*

**Applicable Law**

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1). The court may issue an order under this section only if, after a hearing, it finds by clear and convincing evidence that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and (2) treatment with the proposed medication is in the best interest of the patient. *Id.* § 574.106(a–1)(1).

"Capacity" refers to a patient's ability to (1) understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. *Id.* § 574.101(1) (West 2017). A patient does not have the capacity to make a decision regarding the administration of medications if the patient does not understand the nature of his mental illness or the necessity of the medications. *See A.S. v. State*, 286 S.W.3d 69, 73 (Tex. App.–Dallas 2009, no pet.). In making its finding that treatment with the proposed medication is in the best interest of the patient, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if treated with psychoactive medication, (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication, and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication. TEX. HEALTH & SAFETY CODE ANN. § 574.106(b).

**Hearing on Application**

Pontius testified that she is T.M.'s treating physician and that he is under a court order pursuant to Chapter 46C of the code of criminal procedure, having been found not guilty, by reason of insanity, of murdering his stepfather. She confirmed that T.M. suffers from Bipolar I disorder, the most recent episode manic with psychotic symptoms. She discussed the need for psychoactive medications with T.M., but he verbally refused to accept the medication. He accepted other medications, but not antipsychotic medications. She believed that T.M. understands the medications, side effects, and indications, but does not have insight into his need for the

3

medication. She explained that he denies having a mental illness and does not want any medication or medical interventions. He complained of various side effects to certain medications, such as emotional numbing, a physical sensation in his nervous system, slow thinking, hair loss, weight gain, motor restlessness sensation, as well as long term risks. He expressed no religious objections. Regarding constitutional objections, he wanted freedom to control what substances enter his body.

She testified that T.M. has been previously hospitalized and has a history of aggression toward others, "infrequent but highly lethal violence." She identified an instance on April 5, 2019, when he experienced escalating anger and frightened the hospital staff to the extent they called for back-up. T.M. had been shadowboxing, kicking an upright support, and making threats toward another patient. The staff recognized the potential for harm and escorted the patient inside the building, but T.M. followed and told a nurse that he was not "going to be stopped." The nurse described T.M. as having a rage-filled tone and an intense look. The staff were so concerned for the patient's safety that they placed him in the nurse's station until he could receive one-to-one observation for his safety. During debriefing, the staff expressed concern and an ongoing threat to the patient. They indicated never having seen the type of rage displayed by T.M. Pontius acknowledged that it was uncommon for T.M. to experience these incidents. She stated that T.M. has had no behavioral management episodes since being informed of the plan to pursue a court order.

According to Pontius, T.M.'s prognosis is improved if treated with the proposed medications. She noted that he was discharged twice previously for out-patient treatment, but was readmitted upon stopping the medication. During one discharge, he was prescribed an injection for long-acting Abilify, which he stopped after fleeing the country. Pontius stated that T.M. has a history of noncompliance with medications. T.M. told her that he "cheeked" the oral medication the entire year before being discharged and wanted to prove that he did not need medication. Thus, Pontius recommended that T.M. be on a long-acting injection form of medication. She expressed concern that the lack of treatment would lead to a high risk of aggression toward staff or patients in the hospital and prolonged hospitalization.

Pontius believed the medications are the proper course of treatment and in T.M.'s best interest. She did not believe that less intrusive treatments would be as effective. Pontius planned to use the lowest effective dosage of any medications administered and T.M. would be monitored while on the medications. She testified that for his mental stability, he will need an ongoing

4

medication regimen to prevent psychotic relapse. Pontius acknowledged that T.M. may possibly benefit from psychotherapy, but therapy is not in itself a rational approach to his treatment. She wanted to pursue treatment to keep the staff and patients at the hospital safe because she could not predict T.M.'s next aggressive episode.

Pontius explained that T.M. is not currently experiencing psychotic symptoms, but has irrational thinking in terms of weighing the risks and benefits of treatment for Bipolar disorder and lacks insight into his illness and the need for ongoing treatment. Because of his underlying psychiatric diagnosis, she was concerned that T.M. is at risk for impulsive, aggressive behavior, which he showed a glimpse of on April 5. Because of his potential for lethal violence, given his history, she felt that lithium therapy is not in itself effective and she needs the option of FDA indicated atypical antipsychotic medicine, which has been effective for T.M. previously. But, she would not administer any medication that is not in his best interest and would administer medications that will be beneficial with the least amount of side effects. She doubted T.M. could be discharged without the antipsychotic medications.

Regarding the April 5 incident, T.M. testified that the patient had instances of violent outbursts and aggression, and attacked T.M.'s elderly roommate on three separate occasions. He felt an "overwhelming need" to protect his roommate. On April 5, he was working out when he saw the patient and decided to "let him know how I felt about him." T.M. called the patient a coward and stated that he did not like what the patient was doing. He admitted feeling angry, but denied being aggressive toward, verbally threatening, or physically assaulting the patient. As he walked away, he heard steps behind him and turned to see the patient charging him. The patient was restrained and escorted inside. After T.M. finished working out, he wanted to return to his unit. He believed it was wrong to confront the patient, but did not believe the incident warranted antipsychotic medication, as no one suffered harm. According to T.M., the hospital is a stressful environment and people have disagreements. He has since made amends with the patient.

T.M. acknowledged that this is his third hospitalization at Rusk State Hospital, and he has been hospitalized approximately three times outside of Rusk. He was hospitalized shortly before the murder for an anxiety disorder. Regarding the murder, he explained that he became concerned about some activity between his young sister and his stepfather, which he reported to the police, who suggested that T.M. seek help. He agreed and was prescribed anxiety medication. He testified that he had no ill will toward his stepfather and that he subsequently learned that benzodiazepines

5

are linked to instances of aggression and violence. T.M. stated that he has never heard voices. He acknowledged leaving the country to avoid court orders that required he take medication. He testified to contemplating suicide and described leaving the country as a "last resort" to escape the pain from the medication.

T.M. testified that he last had a violent episode when people tried to inject him with antipsychotic medication, but he explained that this was in defense of himself. He testified that he still takes lithium and that an antipsychotic caused "great pain and suffering" in the past. He understood that Bipolar disorder is treated with mood stabilizers and certain antipsychotics. And he knew he needed to take medication for the Bipolar disorder. While he had no objection to other medications, he did not feel any need for antipsychotics because he has been treated with antipsychotic medications in the past and they do not work for him. He described them as counterproductive and painful, a "living nightmare." Specifically, he experienced akathisia, which he described as restlessness in his legs, arms, and upper body. According to T.M., aripiprazole, or Abilify, is associated with akathisia, which causes people to commit suicide. The side effects, including cognitive dysfunction, intensified when his doctor increased the dosage. He wanted the doctor to work with him on the appropriate medication for his individual needs. He acknowledged that taking medication is in his best interest, but that it is important to choose the right medications.

Jennifer Thomason, a former nurse at Rusk and T.M.'s friend, testified that T.M. was violent when taking Abilify, but was not aggressive when taking lithium and Depakote. She believed that Abilify would increase T.M.'s side effects and that other medications would be more effective. Although she believed that T.M. sometimes has anger issues, she did not believe T.M. poses a threat to anyone or that his anger justifies an injection that causes him severe pain.

**Analysis**

T.M. does not dispute that the evidence is legally and factually sufficient to show that he is under a court order to receive inpatient mental health services. Thus, we will consider whether the evidence supports findings that he lacked the capacity to make a decision regarding the administration of psychoactive medications and that treatment with the proposed medications is in his best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1). Citing this Court's decisions in *State ex. rel. E.G.*, 249 S.W.3d 728 (Tex. App.–Tyler 2008, no pet.) and *State ex. rel. B.D.*, No. 12-17-00174-CV, 2017 WL 4161297 (Tex. App.–Tyler Sept. 20, 2017, no pet.) (mem. op.), T.M. maintains that Pontius offered nothing more than conclusory testimony, having merely

answered "yes" in response to the State's questioning regarding best interest, without any elaboration. He classifies Pontius's testimony as mere "perfunctory recitations."

In *E.G.*, the only evidence regarding the appellant's best interest was a conclusory statement in the application by the treating physician that the medications sought to be administered were in the appellant's best interest. *Id.* at 731. We held that the trial court erred in entering its order to administer psychoactive medication, in part, because the treating physician offered no testimony on the subject of whether the administration of the proposed medications was in the best interest of the appellant. *See id.* at 731–32. We explained that a conclusory statement in the application, absent testimony from the physician at the hearing, cannot produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* at 732. We also noted that the Texas Health and Safety Code does not authorize the trial court to base its findings solely on the treating physician's application, because pleadings, such as the physician's application, are not evidence that the statutory standard has been met. *Id.* at 731; *see* TEX. HEALTH & SAFETY CODE ANN. §§ 574.031(e) (West 2017) (stating that Texas Rules of Evidence apply to hearing for court ordered mental health services unless rules are inconsistent with this subtitle), 574.101–.110 (West 2017); *In re E.T.*, 137 S.W.3d 698, 700 (Tex. App.–San Antonio 2004, no pet.); *see also Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (noting that, generally, pleadings are not competent evidence, even if sworn and verified). Because the record only contained the physician's conclusory statement in the application, evidence that the administration of the medications would be in the appellant's best interest was insufficient. *E.G.*, 249 S.W.3d at 731–32.

In *B.D.*, the only evidence regarding B.D.'s best interest came in the form of a conclusory statement from Dr. Stephen Poplar. *B.D.*, 2017 WL 4161297, at *3. At the hearing, Poplar testified that B.D. suffered from schizoaffective disorder and psychosis, his thinking is illogical and disoriented, he suffered from paranoia and delusions, and he verbally refused to take the prescribed medication. *Id.* He affirmed that all of the statements made in his application were true, and his application was entered into evidence. *Id.* When asked whether he believed B.D. lacked capacity to decide whether to take his medication, Poplar said, "I do." *Id.* When asked if B.D. was unable to weigh the risks and benefits of medication, he answered, "yes." *Id.* In response to whether the benefits of the medication outweigh the risks, Poplar answered "yes." *Id.* He also answered "yes" when asked if the medications were in B.D.'s best interest. *Id.* When asked if

B.D. would regain competency faster if the medications were used, he again answered "yes." *Id*. When the State asked if any of the medications would interfere with B.D.'s ability to confer with his attorney in the underlying criminal charge, Poplar replied, "[T]he goal is for it to not. I don't believe it will, but if it should, then we would address that potentially with other medications or reduce the dose of the offending medication[.]" *Id*. B.D.'s counsel asked Poplar if B.D. complained of any side effects, and Poplar answered that B.D. complained that he was being given heroin and being drugged. *Id*. Counsel also asked if B.D. had any religious or constitutional objections to his medication, to which Poplar answered "no." *Id*. B.D. was not present at the hearing, and gave no testimony. *Id*.

Based on this evidence, we concluded that the trial court erred in granting the order to administer psychoactive medication to B.D. *Id*. We explained that Poplar's testimony regarding B.D.'s best interest was merely a perfunctory recitation of the conclusory statements made in his application. *Id*. He offered no testimony as to the consequences to B.D. of not administering the medications, his prognosis if the medication is administered, or the alternatives to treatment with psychoactive medication. *Id*. We also noted that the trial court could not rely solely on the State's application. *Id*. For these reasons, we held that the evidence presented at the hearing could not have produced in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations to be established; thus, the evidence was legally insufficient to support the trial court's order. *Id*.

In the present case, the trial court's findings do not rest on conclusory statements in an application to administer psychoactive medication. In her application, Pontius stated that T.M. has been diagnosed with Bipolar I disorder – manic, severe, with psychotic symptoms, and verbally refused to take medication voluntarily. The proposed method for administering medication included oral and intramuscular, the customary methods for administering the medications. Pontius believed that T.M. lacked the capacity to make a decision regarding the administration of psychoactive medication because he "lacks insight into the nature of his mental illness and the risk for psychotic relapse if not maintained on medication." She determined that medication is the proper course of treatment and if T.M. is so treated, his prognosis is improved, including a lower risk for aggression and an improved chance of discharge to the community. If not so treated, the consequences would be prolonged hospitalization and aggression toward others. She stated that medical alternatives would not be as effective as psychoactive medication, she considered less

8

intrusive treatments, and psychoactive medication outweighs the risks in relation to present medical treatment and T.M.'s best interest. She asked the trial court to compel T.M. to take medications from the following classes: antidepressants, antipsychotics, anxiolytics/sedatives/hypnotics, mood stabilizers, and miscellaneous drugs, such as clonidine.

In addition to the statements in her application, Pontius testified that she is T.M.'s treating physician, he is under a court order for inpatient mental health services, and he suffers from Bipolar I disorder, the most recent episode manic with psychotic symptoms. She sought to administer medication through oral and intramuscular methods, i.e., the customary methods of administration. According to Pontius, T.M. verbally refused to voluntarily take antipsychotic medication. She believed that T.M. lacked insight into his illness and the need for certain medication, as he claims to have no mental illness and has irrational thinking regarding the weighing of risks and benefits of treatment. She noted that T.M. has been hospitalized on numerous occasions, has a history of aggression, left the country to avoid taking antipsychotic medications, admitted to having "cheeked" oral medication, and had no behavioral episodes once being informed of the State's intent to pursue a court order. In her opinion, lithium therapy alone is insufficient given T.M.'s history for lethal violence.

She believed that medication was the proper course of treatment for T.M., that T.M.'s prognosis with medication is "much improved," and that he needs an ongoing medication regimen to prevent psychotic relapse. Pontius explained that T.M.'s taking of antipsychotic medication in the past led to his discharge from hospitalization. If not treated with medication, she testified that T.M. is at a high risk of aggression and it is doubtful he would be released. Pontius considered less intrusive treatments, but testified that none would be as effective as psychoactive medication.

Based on Pontius's testimony at the hearing, we simply cannot conclude that the trial court's order is based solely on the application or that Pontius's testimony is tantamount to the type of perfunctory testimony that precludes such an order. Nevertheless, T.M. further contends that portions of Pontius's testimony conflict with the application and other testimony offered at the hearing: (1) she testified to having good conversations with T.M. about medications and treatment and that he understood these conversations, while the application states he lacks insight into his illness, (2) she acknowledged T.M.'s acceptance of other medications, but not Abilify, (3) she acknowledged that T.M. is knowledgeable regarding his body functioning and side effects, (4) T.M.'s testimony demonstrates insight, including his stated objections to taking the medications,

9

his description of side effects, his acknowledgment that he does need medication, and his desire that doctors work with him on the appropriate medication, and (5) Thomason's testimony contradicts the State's evidence. However, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *State ex. rel. R.L.*, No. 12-08-00207-CV, 2008 WL 4757006, at *5 (Tex. App.—Tyler Oct. 31, 2008, no pet.) (mem. op.). In this role, the trial court was entitled to resolve any conflicts in the evidence in favor of the State and to credit Pontius's testimony over that of T.M. and Thomason. *See J.F.C.*, 96 S.W.3d at 266.

The right to refuse treatment, and the right of patients, generally, to direct the course of their treatment are important. Although by its very nature, involuntary treatment is against the stated wishes of a patient, the trial court was not required to simply defer to T.M.'s beliefs or preferences when determining whether to order the administration of psychoactive medication. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b). Accordingly, viewing all the evidence in the light most favorable to the trial court's findings, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *See id*. § 574.106(a–1); *see also J.F.C.*, 96 S.W.3d at 266. Reviewing the record as a whole, we also conclude that the conflicting evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding. *See J.F.C.*, 96 S.W.3d at 266. The trial court could have formed a firm belief or conviction that T.M. lacked the capacity to make a decision regarding the administration of psychoactive medications and that the administration of psychoactive medication is in T.M.'s best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a–1). Because the evidence is legally and factually sufficient to support the trial court's order, we overrule T.M.'s third issue.

## MOTION FOR CONTINUANCE

In his first issue, T.M. challenges the denial of his motion for continuance for purposes of retaining counsel and experts. The State maintains that T.M.'s first issue is not preserved for appellate review. We agree.

No application for a continuance shall be granted except for sufficient cause supported by affidavit, by consent of the parties, or by operation of law. TEX. R. CIV. P. 251. An oral motion for continuance, unsupported by affidavit or the State's consent, fails to satisfy Rule 251 and does not preserve error. *See Matter of Marriage of Harrison*, 557 S.W.3d 99, 118 (Tex. App.—

10

Houston [14th Dist.] 2018, pet. denied); *see also **Phifer v. Nacogdoches Cty. Cent. Appraisal Dist.***, 45 S.W.3d 159, 173 (Tex. pp.—Tyler 2000, pet. denied). When Rule 251's provisions are not satisfied, we presume that the trial court did not abuse its discretion in denying a continuance. ***Phifer***, 45 S.W.3d at 173; *see **In Interest of S.M.H.***, 523 S.W.3d 783, 797 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The State filed its application on April 12, 2019, and T.M. states that he received a copy that afternoon. The hearing occurred on April 16. At the beginning of the hearing, T.M. moved for a continuance "on the grounds of being given more time to obtain non-appointed counsel of his own choosing as well as expert witnesses that might contradict the experts of the State[.]" As an exhibit, T.M. provided the trial court with a letter that states, in pertinent part, that the "motion brought forth against me today is a direct attack on my liberty interests…I am humbly requesting that the court not deny me due process." The trial court denied the motion for continuance.

To the extent T.M.'s letter can be construed as a written motion for continuance, it is not supported by affidavit or consent of the parties. *See* TEX. R. CIV. P. 251. The same is true to the extent he urged an oral motion for continuance. *See id*. Nor does T.M. argue that a continuance should have been granted by operation of law. *See id*. Because T.M. made no motion for continuance that satisfied the requirements of Rule 251, we presume the trial court did not abuse its discretion by denying the motion for continuance.[1] *See **Harrison***, 557 S.W.3d at 118; *see also **S.M.H.***, 523 S.W.3d at 797; ***Phifer***, 45 S.W.3d at 173. We overrule issue one.

## REQUEST FOR JURY TRIAL

In his second issue, T.M. challenges the trial court's rejection of his request for a jury trial.

---

[1] We also note that the hearing on the application "shall be held not later than 30 days after the filing of the application for the order to authorize psychoactive medication." TEX. HEALTH & SAFETY CODE ANN. § 574.104(d) (West 2017). Subject to this requirement, the trial court *may* grant one continuance on a party's motion and for good cause shown, but may grant more than one continuance only with the parties' agreement. *Id*. § 574.104(e). The patient is entitled to representation by a court appointed attorney who is knowledgeable regarding issues to be adjudicated at the hearing. *Id*. § 574.105(1) (West 2017). Even the *absence* of counsel is generally not good cause for a continuance. *See* TEX. R. CIV. P. 253. Here, counsel was not absent from the hearing; rather, as provided by the statute, T.M. was represented by appointed counsel. Additionally, the statute states that the patient is entitled to *request* an independent expert. TEX. HEALTH & SAFETY CODE ANN. § 574.105(6). It does not guarantee appointment of an independent expert. *See id*.; *see also **Williams v. Tex. State Bd. Of Orthotics & Prosthetics***, 150 S.W.3d 563, 573 (Tex. App.—Austin 2004, no pet.) ("we will not read into an act a provision that is not there, except to give effect to clear legislative intent").

**Standard of Review and Applicable Law**

We review the trial court's denial of a request for a jury trial for an abuse of discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). We consider the entire record and determine whether the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *Id*.

When construing a statute, our objective is to determine and give effect to the legislature's intent. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). We examine the entire act, not just isolated portions of it. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We begin with the plain and common meaning of the statute's words. *Id*. If the statutory language is unambiguous, we interpret the statute according to its plain meaning. *Id*. Words and phrases shall be read in context and construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (West 2013). We presume that every word of the statute has been used for a purpose, and that every word excluded from the statute has been excluded for a purpose. *Laidlaw Waste Sys. (Dallas), Inc.*, 904 S.W.2d at 659. We also presume that the legislature enacted the statute with complete knowledge of existing law and with reference to it. *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). It is further presumed that the legislature enacts a statute with the intention of complying with the Texas and United States constitutions. TEX. GOV'T CODE ANN. § 311.021(1). We may consider the object sought to be obtained by the statute, common law or former statutory provisions, and the consequences of a particular construction. *Id*. § 311.023(1), (4), (5).

**Analysis**

T.M. contends that the "right to a jury trial concerning [an] Application for Order to Administer Psychoactive Medication — Forensic, which has the potential to fundamentally effect a patient's brain function and body chemistry is equal to if not in excess of the right to a jury concerning matters of incarceration." According to T.M., he was entitled to a jury trial under the First, Sixth, and Fourteenth Amendments of the United States Constitution, "Article III, Section 2 of the Constitution" and the trial court violated his due process rights by denying his request for a jury trial. He contends, "As such a fundamental right is inherent in a trial concerning the involuntary administration of psychoactive medication, it follows that it was a violation of due process to deny a written request for a jury trial in this case."

12

On the day of the hearing, T.M.'s counsel requested a jury trial on his behalf and presented the trial court with T.M.'s letter, which stated that the application was a direct attack on his liberty interests and requested that the trial court not deny him due process. He further stated, "I am also humbly but formally [i]nvoking my right to a trial by a jury of my peers" regarding the State's application. He asked to be informed of the costs and fees associated with a jury trial so that he could timely pay the fees or costs. The State had no objection to the statement and commented, "[h]e certainly has a right to make it."

To preserve error for appeal, a party must show that he made his complaint to the trial court by a timely request, objection, or motion that stated the grounds for the ruling with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context, and the trial court ruled on the request, objection, or motion or refused to rule. TEX. R. APP. P. 33.1(a). This requirement applies to constitutional claims a party wishes to raise on appeal. *State ex. re. D.D.*, No. 12-12-00220-CV, 2013 WL 3486991, at *4 (Tex. App.—Tyler July 10, 2013, no pet.) (mem. op.). At no time, however, did T.M. argue to the trial court that denying his request for a jury trial would result in a violation of due process or other constitutional provision. And his general reference to due process is insufficient to preserve the specific complaint he now presents on appeal. *See In re Commitment of Matlock*, No. 09-11-00670-CV, 2012 WL 4712901, at *3 (Tex. App.—Beaumont Sept. 11, 2012, pet. denied) (mem. op.).

Nevertheless, as previously stated, statutes are presumed to have been enacted by the legislature with complete knowledge of existing law and with reference to it, including the Texas and United States Constitutions. *Kruse v. Henderson Tex. Bancshares, Inc.*, No. 12-18-00238-CV, 2019 WL 4125966, at *4 (Tex. App.—Tyler Aug. 30, 2019, no pet. h.) (op.) (citing *Acker*, 790 S.W.2d at 301); TEX. GOV'T CODE ANN. § 311.021(1). This Court has previously held that Section 574.106 of the Texas Health and Safety Code, which addresses the hearing and order authorizing psychoactive medication, is not vague and ambiguous, and did not violate the patient's right to due process. *See State ex rel. D.H.*, No. 12-04-00181-CV, 2004 WL 2820896, at *4-6 (Tex. pp.—Tyler Dec. 8, 2004, no pet.) (mem. op.).

Moreover, the right of trial by jury is not absolute in civil cases, but is regulated by laws and rules that specify its availability. *Hayes v. State*, 518 S.W.3d 585, 592 (Tex. App.—Tyler 2017, no pet.). As applicable to the present case, the plain language of the statute demonstrates that an application for an order authorizing the administration of psychoactive medication must be

13

heard by the court, not a jury. Specifically, the "*court* may issue an order authorizing the administration of one or more classes of psychoactive medication to a patient[.]" TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (emphasis added). Section 574.106 expressly states that a hearing on the State's application "*shall* be conducted on the record *by the probate judge or judge with probate jurisdiction*," and may be referred to a magistrate or court-appointed associate judge. *Id*. § 574.106(c)-(d) (emphasis added). The statute provides that the "*court* may issue an order under this section only if the *court*" makes certain findings by clear and convincing evidence after the hearing. *Id*. § 574.106(a-1) (emphasis added). Additionally, the statute sets forth certain factors the *court* shall consider when determining whether treatment with the proposed medication is in the patient's best interest. *Id*. § 574.106(b).

A "court" is a "tribunal constituted to administer justice," especially "a governmental body consisting of one or more judges who sit to adjudicate disputes," or the "judge or judges who sit on such a tribunal." *Court*, BLACK'S LAW DICTIONARY (10th ed. 2014). The term "judge" is often used interchangeably with "court." *Judge*, BLACK'S LAW DICTIONARY. The term "hearing" is defined as "[a] judicial session, usu. open to the public, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying." *Hearing*, BLACK'S LAW DICTIONARY. It is also termed "judicial hearing." *Id*. In contrast, the term "trial" is defined as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding" and includes both a jury trial and a trial before a judge without a jury. *Trial*, BLACK'S LAW DICTIONARY. As this Court recently noted, these definitions indicate that the use of a jury is not anticipated at a hearing. *See Kruse*, 2019 WL 4125966, at *3.

Accordingly, the statute's plain language evidences a legislative intent that the court, not a jury, preside over the hearing to determine whether an order for psychoactive medication is warranted. And we will not read into a statute a provision that is not there. *See Williams v. Tex. State Bd. Of Orthotics & Prosthetics*, 150 S.W.3d 563, 573 (Tex. App.—Austin 2004, no pet.).

Thus, under the circumstances of this case, we conclude that the trial court did not err by conducting the hearing, without a jury, on the State's application to administer psychoactive medication. We overrule issue two.

## DISPOSITION

Having overruled T.M.'s three issues, we *affirm* the trial court's order authorizing the Texas Department of State Health Services to administer psychoactive medication.


**JAMES T. WORTHEN**
Chief Justice


Opinion delivered September 18, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### SEPTEMBER 18, 2019

### NO. 12-19-00160-CV

### THE STATE OF TEXAS FOR THE
### BEST INTEREST AND PROTECTION OF T.M.

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 42.650)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the order authorizing the Texas Department of State Health Services to administer psychoactive medication of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*